526 A.2d 450

Frank M. Sheesley Company and Pennsylvania National Mutual Casualty Insurance Company, Petitioners v. Workmen's Compensation Appeal Board (Brant), Respondents.

Submitted on briefs March 23, 1987, to Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Robert C. Rose, Spence, Custer, Saylor, Wolfe & Rose,* for petitioners.

*Vincent J. Barbera,* for respondent.

Opinion by Judge Colins, May 20, 1987:

Frank M. Sheesley Company (employer) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed an order of the referee awarding workmen's compensation benefits to Carl L. Brant (claimant), in accordance · with Section 309(e) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §582(e).

The claimant sustained a compensable injury on July 31, 1980, and was paid compensation for total disability pursuant to a Notice of Compensation Payable in the amount of $242 per week as based on an average pre-injury weekly wage of $505.18. Some two and a half years later, the employer requested review of the compensation agreement, alleging that it had overpaid compensation to the claimant as a result of a miscalculation of the claimant's average weekly wage. The miscalculation, according to the employer, resulted from its use of the optional formula found in Section 309(e) of the Act, which pertinently provides for a computation of the average weekly wage as follows:

> If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is less than if computed as follows, his [sic] computation shall apply, viz.: Divide the total wages earned by the employe *during the last two completed calendar quarters* with the same employer by the number of days he worked for such employer during such period multiplied by five. [Emphasis added.]

The employer contended to the referee that the computation of claimant's pre-injury average weekly wage should instead be governed by Section 309(d) of the Act, 77 P.S. §582(d), because the claimant actually worked only five days in the two quarterly periods, *i.e.,* 26 weeks, preceding his injury. Section 309(d) of the Act provides for the computation of the average weekly

wage as the "wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned . . . in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury. . . ." In accordance with this computation, the employer contended that claimant's average weekly wage should be only $227.80, rather than the $505.18, forming the basis of the compensation agreement.

Upon consideration of arguments of counsel, and without taking testimony, the referee concluded that the employer had correctly computed the claimant's average weekly wage to be $505.18, thereby entitling claimant to compensation in the amount of $242 per week. The referee further concluded that implementation of Paragraph 309(d)[1] of the Act "requires that the employee work *continuously* for a year preceding the accident for the *same* employer and that both requirements were fulfilled relative to the claimant's work history." The Board affirmed and the employer's appeal to this Court followed.

Upon appeal, the employer contends that the Board erred as a matter of law in affirming a computation based upon Section 309(e) of the Act. The employer submits that claimant cannot rely on the optional calculation of that section to compute an optimal weekly wage because he did not work the full two quarterly periods preceding his injury. The claimant's wage statement indeed reveals the number of actual days

---

[1] Although the referee refers to Section *309(d)* of the Act, it is clear from his computation of claimant's average weekly wage, the language of his decision, his citation to our Supreme Court's decision in *Romig v. Champion Blower & Forge Co.,* 315 Pa. 97, 172 A. 293 (1934), and the Board's affirmance of his decision on the basis of Section *309(e),* that the referee erroneously indicated that section of the Act.

worked by the claimant and his earnings in the year preceding his injury as follow:

| Period | Total Wages | Days Worked |
|--------|-------------|-------------|
| 1. | $1088.76 | 10 |
| 2. | 2961.43 | 30 |
| 3. | — | — |
| 4. | 505.18 | 5 |

We are convinced, as the referee and Board determined, that the claimant may maximize his weekly wage computation in accordance with the formulation contained in Section 309(e) despite the intermittent nature of his employment in the two quarters preceding his injury. In so holding, we are guided by our Supreme Court's decision in *Romig v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293 (1934). In *Romig*, the claimant worked just two days per week during the years of his employment, a restrictive schedule made necessary by economic conditions. Notwithstanding the fact that claimant worked only two days per week, the Court held that a computation of the average weekly wage using the then applicable 5½ day work week standard was mandatory because claimant's employment was "continuous, in that the status of the employer and employe persist[ed] between the parties even though no work was done on a particular day." *Id.* at 102, 172 A. at 295.

The employer here does not contend that claimant's employment was seasonal so as to implicate the computation in Section 309(e) for seasonal occupations. Nor does the employer suggest that claimant was discharged after periods of employment and re-hired in subsequent quarters. Indeed, the employer states in its brief that "claimant, with the exception of lay-off, was employed continuously for the year preceding the accident." We conclude that, as in *Romig*, the claimant's employment was continuous, although the number of days actually

worked was sporadic. Moreover, the authority cited by the employer in support of its contention that claimant is precluded from taking advantage of the optional calculation of Section 309(e) by his intermittent employment is inapposite. *See McStay v. Workmen's Compensation Appeal Board (Itri),* 77 Pa. Commonwealth Ct. 151, 465 A.2d 127 (1983); *C. Simpson Co. v. Workmen's Compensation Appeal Board,* 16 Pa. Commonwealth Ct. 566, 332 A.2d 862 (1975). (In those cases, the claimant was not employed by employer for two completed quarters, *i.e.,* 26 weeks, before his accident.)

We are, of course, cognizant of the fact that the claimant's average weekly wage as computed in accordance with the optional calculation of Section 309(e) exceeds his actual remuneration. This Court has noted in *Guttman Oil Co. v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 486, 426 A.2d 760 (1981), *citing* 1 Barbieri, Pennsylvania Workmen's Compensation §§5.38(7) and 5.38(8) (1975), that anomalous results may be reached by the literal application of Section 309(e) of the Act but that *Romig* is dispositive of the issue. "Even if that is the case, [we] are bound by the provisions of Section 309(e) as interpreted by the Supreme Court. As was said in *Romig,* 'We must take the law as we find it and apply the rules there set forth.' " *Id.* at 490, 426 A.2d at 762, *citing Romig,* 315 Pa. at 103, 172 A. at 295. "The apparent inequities must be remedied by the legislature, not this court." *Guttman,* 57 Pa. Commonwealth Ct. at 490, 426 A.2d at 762.

There is no ambiguous or restrictive language in Section 309(e) of the Act. The claimant has satisfied the requirement of "two completed quarters with the same employer" as found in that section and is entitled to maximize his average weekly wage for purposes of de-

termining compensation in accordance with the formulation contained therein.

Accordingly, the order of the Board is affirmed.

ORDER

AND NOW, May 20, 1987, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.