551 A.2d 616

Lois A. Follett, Petitioner *v.* Workmen's Compensation Appeal Board (Massachusetts Mutual Life Insurance Company), Respondents.

Massachusetts Mutual Life Insurance Company, Petitioner *v.* Workmen's Compensation Appeal Board (Follett), Respondents.

Submitted on briefs April 19, 1988, to Judges BARRY and SMITH, and Senior Judge NARICK, sitting as a panel of three.

60

*Donald F. Smith, Jr., Liever, Hyman & Potter, P.C.,* for petitioner, Lois A. Follett.

*Clifford A. Goldstein,* with him, *Peter J. Weber, Rawle & Henderson,* for respondents.

OPINION BY JUDGE BARRY, December 13, 1988:

Lois A. Follett (claimant), widow of John A. Follett (decedent), and Massachusetts Life Insurance Company (employer) have filed cross appeals from an order of the Workmen's Compensation Appeal Board (Board) which amended the decision of the referee granting claimant workmen's compensation benefits based on an average weekly wage of $253.84 instead of $142.00 and affirmed the referee's decision in all other respects.

Prior to December 5, 1981, decedent, during the year 1981, was an insurance agent for John Hancock Mutual Life Insurance Company (John Hancock) and, apparently, for other insurance companies. On December 4, 1981, he terminated his status as insurance agent for John Hancock. During the period of October through December of 1981, claimant was paid $4;613-.96 by John Hancock.

On December 5, 1981, decedent entered into a "career contract for full-time agents" with Mr. Berry Boyd, the exclusive general agent for the employer in twenty-two counties in the Commonwealth and joint general agent for the employer in three counties in the

Commonwealth. Decedent, for his services as a full-time agent, was paid on a commission basis by employer. From January 1, 1982 to April 22, 1982, he was paid $622.66 in commissions. On the same date that the decedent was hired as an insurance agent he was also hired by Mr. Boyd as the staff supervisor. For his services as staff supervisor the decedent was paid the sum of $3,000 for the month of December, 1981, and $400.00 per month thereafter for the months of January through March of 1982.

On March 4, 1982, decedent entered into a producer's agreement and producer's service fee agreement with Standard Security Life Insurance Company of New York (Standard Security). Prior to this agreement, he received, on February 15, 1982, a commission of $12.80 for renewal of a life insurance policy of Standard Security on February 5, 1982. On March 5, 1982, the decedent entered into an independent producer's commission agreement with John Hancock wherein he was identified as a broker and an independent contractor to procure applications for ordinary insurance and annuities for John Hancock. There is no evidence indicating whether decedent sold any insurance policies for John Hancock after he entered into this agreement.

On April 22, 1982, decedent died as a result of injuries suffered in a motor vehicle collision. Claimant, thereafter, filed two fatal claim petitions for compensation on behalf of herself and her four children. One named employer as the defendant/employer and the other Mr. Boyd as the defendant/employer. The two fatal claim petitions were consolidated for the purposes of hearing and disposition. The referee found that there was an employer/employee relationship between the decedent and the employer but not between Mr. Boyd and the decedent. He also found that decedent's injuries and death arose in the course of his employment

with employer as an insurance agent while engaged in the furtherance of the employer's business. The decedent's average weekly wage was calculated by the referee, who utilized the mathematical formulae set forth in Sections 309(b) and (d) of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P. L. 736, *as amended*, 77 P.S. §582(b), (d), to be $141.19.[1] Since this was less than 50% of the state-wide average weekly wage which, in the year 1982, was set as $284.00, the claimant's average weekly wage pursuant to Section 307 of the Act, 77 P.S. §561, was deemed to be $142.00. The weekly rate of the benefits that were to be paid to claimant in her own behalf and that of her children was then calculated using that figure. The referee also found, *inter alia*, that claimant had incurred costs of $258.30 for transcripts of hearings held before him. However, in entering his order, he did not award the claimant these costs.

Both the claimant and the employer filed appeals with the Board. However, the employer subsequently withdrew its appeal. The Board, utilizing only the formula set forth in Section 309(d), calculated decedent's average weekly wage to be $253.84 and, accordingly, amended the referee's decision while affirming the

---

[1] The referee took the decedent's staff supervisor monthly salary as of the date of his injury ($400) and, pursuant to Section 309(f), multiplied it by twelve and divided it by fifty-two, to find that his average weekly wage as staff supervisor was $92.31. He then took the total commissions paid to the decedent by the employer and Standard Security during the first period of thirteen calendar weeks immediately preceding his injury ($635.46) and, pursuant to Section 309(d), divided them by thirteen, which produced a figure of $48.88. Since decedent had not been paid commissions during the second period of thirteen calendar weeks preceding his death, he held that that figure constituted his average weekly wage as an insurance agent. Combining these two sums he concluded that decedent's average weekly wage was $141.19.

referee's decision in all other aspects. These cross appeals followed.

The claimant, in her appeal, first contends that the referee and Board erred in failing to compute the decedent's average weekly wage under the mathematical formula set forth in Section 309(f) of the Act, 77 P.S. §582(f). According to the claimant, calculation of the decedent's average weekly wage under that formula would have resulted in the calculation of an average weekly wage more favorable than that reached by either the referee or the Board. Specifically, she contends that calculation of the decedent's average weekly wage under Section 309(f) produces a figure of $585.69.

Section 309(f) establishes a mathematical formula for calculating the average weekly wage of an employee that may be used as an alternate to the set of formulae set forth in Sections 309(a)-(d) for employees whose occupations are not exclusively seasonal and the formula set forth in the first paragraph of Section 309(e) for employees whose occupations are exclusively seasonal. It provides:

> In no case shall an employe's average weekly wage be less than one-thirteenth of his highest calendar quarter wage amount in the first four of the last five completed quarters immediately preceding the date of his injury, and compensation payments may be commenced on this basis unless other information obtained by the employee or employer establishes a higher weekly wage under this section.

The referee rejected utilization of the above formula for calculating the decedent's average weekly wage on the ground that decedent had worked for the employer for less than two calendar quarters. In doing so, he erred. Section 309(f) does not require that an employee must have worked for an employer for any specified pe-

riod of time before the formula set forth therein can be used to calculate his average weekly wage. It merely defines that period within which wages must have been earned by the employee in order that they may be considered when calculating his average weekly wage.

In arguing that calculation of the decedent's average weekly wage under Section 309(f) would have produced a more favorable figure than that reached by the referee, claimant contends that wages paid to the decedent by prior employers can be considered for the purpose of calculation of benefits. Claimant relies upon the principle of statutory construction that where one section of a statute contains a given provision the omission of that provision from a similar section is significant to show that a different intention existed, *Corley v. Pennsylvania Board of Probation and Parole*, 83 Pa. Commonwealth Ct. 529, 478 A.2d 146 (1984). She points out that there is language in Section 309(d) of the Act which indicates that the only wages to be considered in computing the average weekly wage of an employee having an occupation that is not exclusively seasonal are those paid by the employer liable for compensation. Claimant argues that, in the absence of such language in Section 309(f), wages which were not earned in the employ of the employer liable for compensation can be considered when calculating the average weekly wage under that provision.

The employer, relying upon the same principle of statutory construction as that relied upon by the claimant, counters the claimant's argument on this point by pointing out that the formula set forth in the first paragraph of Section 309(e) of the Act and the provision set forth in the third paragraph of that section contain language indicating that wages which were not earned while in the employ of the employer liable for compensation can be considered in computing an employee's

average weekly wage. Employer contends that, given the absence of such language in Section 309(f), wages earned in the employ of an employer by whom claimant was not employed on the date of the injury cannot be considered when calculating the average weekly wage of an employee whose occupation is not exclusively seasonal under that provision.

Where the terms of a statute are not free from ambiguity, a court must ascertain their intended meaning by examining other indicia of the legislature's intent. *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974). Here, as it can be seen from the arguments of the parties, the Act is ambiguous as to whether wages of an employer who is not liable for compensation may be considered when calculating an employee's average weekly wage under Section 309(f). In ascertaining the legislative intent for the purposes of construing a statute, the practical results of a particular interpretation may be considered. *Lehigh Valley Co-op Farmers v. Bureau of Employment Security, Department of Labor and Industry*, 498 Pa. 521, 447 A.2d 948 (1982). It must be presumed that the legislature did not intend to enact a statute whose application would produce an absurd or unreasonable result. *See Valley Forge Industries, Inc. v. Armand Construction, Inc.*, 38 Pa. Commonwealth Ct. 603, 394 A.2d 677 (1978); 1 Pa. C. S. §1922. One possible result of the claimant's interpretation of Section 309(f) is that an employer would be required to pay a higher premium for workmen's compensation insurance or, in the event that it is self-insured, to set aside larger amounts as reserves to cover claims for benefits because employees had been paid higher wages by prior employers. Such a result, in the opinion of this Court, is unreasonable. Accordingly we conclude that, in calculating the average weekly wage of an employee whose occupation is not exclusively seasonal un-

der Section 309(f), only wages earned in the employ of employers by which the claimant was employed on the date of the injury can be considered.

Having reached the above conclusion, we must next determine during what period of time those wages must have been earned in order to be considered in calculating the decedent's average weekly wage, inasmuch as the parties disagree on this matter. Under the formula in Section 309(f), the average weekly wage is to be one-thirteenth of the highest calendar quarter wage amount *in the "first four of the last five completed calendar quarters immediately preceding the date of [employe's] injury"*.

We find no definition within the Act as to what constitutes a "calendar quarter". Therefore, those words must be given their common meaning. 1 Pa. C. S. §1903(a). The term "calendar quarter" is defined as "one of the four periods of three months each of a *calendar year*". Webster's Third New International Dictionary, p. 316. The term "calendar year" is defined as "a period of a year beginning and ending on . . . January 1 and December 31 . . .". *Id*. Therefore, the term "calendar quarter" refers to one of the four periods of three months beginning and ending on January 1 and March 31, April 1 and June 30, July 1 and September 30 and October 1 and December 31. The term "calendar quarter" is modified by the term "completed" which, in turn, is modified by the phrase "immediately preceding the date of injury". We, therefore, conclude that for wages to be considered in calculating an employee's average weekly wage under Section 309(f), they must have been earned in the first four of the last five periods of three months beginning and ending on January 1 and March 31, April 1 and June 30, July 1 and September 30 or October 1 and December 31, respectively, that were completed immediately prior to the date of the employee's injury.

In the present case, decedent was injured on April 20, 1982. Therefore, the wages to be considered in calculating his average weekly wage were those earned in the periods of January 1, 1981 through March 31, 1981, April 1, 1981 through June 30, 1981, July 1, 1981 through September 30, 1981 and October 1, 1981 through December 31, 1981. Decedent's average weekly wage, under Section 309(f), is one-thirteenth of the highest of the total amount of wages earned in each of those four periods. Since he had only been paid $3,000 by the employer during the period of October through December of 1981, his average weekly wage, under Section 309(f) is $230.77. Thus, the average weekly wage produced by calculation under Section 309(f) is higher than that reached by the referee ($142.00).

Computation of the decedent's average weekly wage under Section 309(f) does not, however, produce a more favorable average weekly wage than the one reached by the Board ($253.84). That brings us to the issues raised by the employer in its cross appeal. It is the employer's contention that the Board erred in reversing the referee's calculation of the decedent's average weekly wage based upon its calculation of the decedent's average weekly wage solely under Section 309(d) of the Act when the claimant did not argue for the utilization of that formula. Employer also contends that the Board's calculation of the decedent's average weekly wage is incorrect.

Employer relies upon this Court's decision in *Bethlehem Mines Corporation v. Workmen's Compensation Appeal Board (Moran)*, 43 Pa. Commonwealth Ct. 454, 402 A.2d 718 (1979), as support for its argument that the Board cannot sua sponte consider an issue not raised by an appellant. *Bethlehem Mines* does not, however, support the employer's position. In *Bethlehem Mines* it was held that, where an issue was not raised

either before the referee or the Board, *this Court* would not consider it on appeal. Employer also relies upon Rule of Appellate Procedure No. 1551(a) as support for the position it advances. The Rules of Appellate Procedure do not, however, govern appeals from the referee's decision to the Board.

Although the employer's reliance upon *Bethlehem Mines* and Pa. R. A. P. 1551(a) may be misplaced, we believe that its position is correct. By calculating the decedent's average weekly wage solely under the formula set forth in Section 309(d) when claimant did not argue that the decedent's average weekly wage should have been so calculated, the Board here exceeded its review function. Sua sponte consideration of an issue deprives counsel of the opportunity to brief and argue the issues and the Board of the benefit of counsel's advocacy.

Because calculation of the decedent's average weekly wage under Section 309(f) produces a more favorable figure than the figure reached by the referee and because the Board should not have calculated the decedent's average weekly wage solely under Section 309(d) of the Act, the order of the Board is reversed insofar as it orders the payment of benefits in accordance with the provisions of Section 307 of the Act based on an average weekly wage of $253.84. It is hereby ordered that claimant shall be paid benefits, in accordance with said statutory provision, based on an average weekly wage of $230.77.

Finally, we address the second issue raised by the claimant in her appeal. It is the claimant's contention that the Board erred in affirming the referee's decision when he failed to award her costs for transcripts of the hearings before him.

In our decision in *Boeing Vertol Co. v. Workmen's Compensation Appeal Board (Coles)*, 107 Pa. Common-

wealth Ct. 388, 528 A.2d 1020 (1987), this Court held that the costs of hearing transcripts are allowable when found to be reasonably necessary for presentation of the case. Here, the referee, while finding that claimant had incurred expenses for hearing transcripts, did not order that the claimant be reimbursed for those expenses. Furthermore, he made no finding as to whether those transcripts were reasonably necessary for the presentation of the claimant's case. Given that *Boeing Vertol* was not decided until both the referee and Board had made their decisions, it is most likely that the referee had not formed any opinion as to whether the hearing transcripts were necessary for the presentation of the claimant's case at the time he entered his order.

It is the opinion of this Court that a conclusion that hearing transcripts are reasonably necessary for the presentation of a claimant's case is a legal conclusion that must be arrived at based on facts as found by the referee. In order for this Court and the Board to review such a conclusion to determine whether an error of law has been committed, we believe that the referee must first make findings of fact and be given the opportunity to render his conclusion as to whether the hearing transcripts were reasonably necessary for the presentation of the claimant's case. Therefore, the portion of the Board's order affirming the failure of the referee to award the costs for the hearing transcripts is vacated and this matter is remanded to the Board so that it may remand to the referee to make necessary findings of fact and conclusions of law.

## ORDER

NOW, December 13, 1988, the order of the Workmen's Compensation Appeal Board, dated July 15, 1987, at Docket No. A-92442, is hereby reversed insofar as it ordered the payment of a weekly benefit to claim-

ant in an amount based on an average weekly wage of $253.84. Claimant shall be paid a weekly benefit in an amount based on an average weekly wage of $230.77.

Furthermore, this matter is remanded to the Board so that it may remand it to the referee for further action which is consistent with the foregoing opinion.

Judge MACPHAIL did not participate in the decision in this case.