582 A.2d 722

**John BLASCHOCK, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (YALENA CONSTRUCTION COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 23, 1990.

Decided Nov. 15, 1990.

Paul J. Dufallo, Zimmerman, Lieberman & Derenzo, Pottsville, for petitioner.

Wilbur C. Creveling, Jr., Creveling & Creveling, Allentown, for respondent, Yalena Const. Co.

Before PALLADINO and SMITH, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

Before this Court is the petition for review filed by John Blaschock (Claimant) from a decision of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's calculation of Claimant's average weekly wage under Section 309(e) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(e). The sole issue presented is whether the referee incorrectly calculated the average weekly wage of Claimant contrary to provisions of Section 309 of the Act. The Board's order is vacated, and this matter is remanded.

Claimant was employed as a laborer for Yalena Construction Company (Employer) for approximately two years prior to sustaining a back injury during the course of his employment on May 26, 1986. Claimant installed gas lines which required him to dig ditches and install pipes *outdoors underground*. Since this work cannot be performed during the fall and winter months when the ground freezes, making the installation of pipes impractical or impossible, Claimant's employment was considered seasonal.[1] Board Decision, p. 2. Benefits were awarded to Claimant based upon the formula set forth in paragraph one of Section 309(e) of the Act which provides that:

In occupations which are exclusively seasonal and therefore cannot be carried on throughout the year, the aver-

1. Seasonal occupation under Section 309 was defined by this Court in *American Mutual Insurance Co. v. Workmen's Compensation Appeal Board (Davenport)*, 108 Pa.Commonwealth Ct. 345, 530 A.2d 121 (1987), citing language from *Froehly v. Harton*, 291 Pa. 157, 163, 139 A. 727, 730 (1927), which held that: "[s]easonal occupations logically are those vocations which cannot, from their very nature, be continuous or carried on throughout the year, but only during fixed portions of it."

age weekly wage shall be taken to be one-fiftieth of the total wages which the employe has earned from all occupations during the twelve calendar months immediately preceding the injury, unless it be shown that during such year, by reason of exceptional causes, such method of computation does not ascertain fairly the earnings of the employe, in which case the period for calculation shall be extended so far as to give a basis for the fair ascertainment of his average weekly earnings.

The referee calculated Claimant's average weekly wage by totalling the income earned while employed by Employer during the preceding twelve months and dividing the sum by fifty arriving at an average weekly wage of $138.65 and a compensation rate of $124.24 per week. The Board upheld the referee's decision as supported by the evidence.[2]

On appeal to the Board, Claimant contended that the referee erred in his calculation by failing to employ paragraph four of Section 309(e) of the Act or, in the alternative, that the referee should have applied Section 309(f) of the Act when determining the average weekly wage. The Board rejected Claimant's arguments concluding that he failed to meet the statutory requirements of these provisions and, therefore, the referee correctly concluded that paragraph one of Section 309(e) provided the appropriate formula for calculating Claimant's average weekly wage.

Paragraph four of Section 309(e) states:

If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is less than if computed as follows, his [sic] computation shall apply, viz.: Divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the number of days he worked for such employer during such period multiplied by five.

2. It could be contended however that even if Claimant's occupation or vocation were seasonal, the language of the last paragraph of Section 309(e) is applicable to the first paragraph of subsection (e), since the last paragraph is specifically made applicable by the Legislature to all of the paragraphs of subsection (e).

The formula contained in paragraph four, Claimant contends, would fix his average weekly wage at $427.94 ($6932.62 divided by 81, and multiplied by 5.).

In the alternative, Claimant contends that Section 309(f) is applicable which states:

In no case shall an employe's average weekly wage be less then one-thirteenth of his highest calendar quarter wage amount in the first four of the last five completed calendar quarters immediately preceding the date of his injury, and compensation payments may be commenced on this basis unless other information obtained from the employe or employer establishes a higher weekly wage under this section.

Under this provision, Claimant's average weekly wage would be fixed at $397.59 ($5,168.62 divided by 13). *See* Claimant's Brief, pp. 7, 9.

Initially, Claimant argues that the Board incorrectly assumed that paragraph four of Section 309(e) was inapplicable since Claimant did not work and complete the last two quarters immediately preceding the injury to invoke this alternate formula. Claimant asserts that no such requirement is established by the wording of paragraph four and that this provision merely directs attention to the "last two completed calendar quarters with the same employer" without any indication as to the time during which the last two calendar quarters must fall.

Employer disagrees with Claimant's interpretation of paragraph four of Section 309(e), and while recognizing that the terms of this statute are not free from ambiguity, asserts that if paragraph four of Section 309(e) were applied, paragraph one, which specifically provides the formula for exclusively seasonal workers, would be rendered useless and mere surplusage. Employer further argues that to utilize the formula in paragraph four of Section 309(e) would provide for an average weekly wage to Claimant as though he were employed as a regular employee and earned his seasonal salary year round. Moreover, the application of this formula would entitle Claimant to yearly

benefits calculated to be more than twice the total salary earned by Claimant for the year, an unreasonable result not intended by the Legislature.

Claimant cites *Follett v. Workmen's Compensation Appeal Board (Massachusetts Mutual Life Insurance Co.),* 122 Pa.Commonwealth Ct. 58, 551 A.2d 616 (1988), *appeal denied,* 522 Pa. 606, 562 A.2d 828 (1989), to support his contention that Section 309(f) should be applied in the alternative. This Court held in *Follett* that Section 309(f) does not require that a claimant must have worked for an employer for any specified period of time before that formula can be utilized but merely defines the period within which wages must have been earned. Therefore, according to Claimant, where a claimant presents proof that wages were earned in any four of the last five completed quarters immediately preceding the date of injury, such wages must be considered in computing the average weekly wage. In *Follett,* this Court stated:

> [F]or wages to be considered in calculating an employee's average weekly wage under Section 309(f), they must have been earned in the first four of the last five periods of three months beginning and ending on January 1 and March 31, April 1 and June 30, July 1 and September 30 or October 1 and December 31, respectively, that were completed immediately prior to the date of the employee's injury.

*Follett,* 122 Pa.Commonwealth Ct. at 66, 551 A.2d at 620.

The clear language of Section 309(f) and *Follett* define the earnings period for calculating the average weekly wage as the first four of the last five quarters completed immediately prior to the date of injury. Although Claimant's position may ultimately have merit, the record fails to contain any evidence of Claimant's fifth completed quarter immediately preceding the date of his injury. It is therefore necessary to remand this matter for additional hearing on this issue and for the referee to determine, upon receipt of any additional evidence, whether Section 309(f) does in fact govern the calculation of Claimant's average weekly

wage as opposed to other formulas contained in Section 309(e) of the Act. The Board's order is therefore vacated and this matter is remanded for further hearing.

## ORDER

AND NOW, this 15th day of November, 1990, the order of the Workmen's Compensation Appeal Board is vacated, and this matter is remanded for further hearing consistent with this opinion.

Jurisdiction relinquished.

BARBIERI, Senior Judge, concurring and dissenting.

While I agree with the result reached by the majority, the remand to consider Section 309(f) of the Act [1] in computing Claimant's wages for compensation purposes, I must disagree with the majority's view that Claimant, a laborer, was a "seasonal" employee when injured.

First, the construction industry is not a seasonal one. A seasonal occupation is one in which the "vocation" can only be carried out during a certain season of the year and, if the work that Claimant does can be performed by workers generally in every season, such as the dishwasher in *Froehly v. Harton*, 291 Pa. 157, 139 A. 727 (1927), then that employment, occupation, or "vocation" is not seasonal. In interpreting the language in Section 309 of the Act, "exclusively seasonal and therefore cannot be carried on throughout the year," our Supreme Court ruled in *Froehly* that a worker's occupation, such as the laborer job of Claimant in this case, cannot be treated as seasonal simply because the employer carries out his business on a seasonal basis. "Intermittent" employment, such as caused by layoffs of Claimant in this case, where the employer, as here, continues with other employees throughout all seasons, does not make Claimant's work seasonal, since intermittent or casual

1. The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915 (Act), P.L. 736, *as amended*, 77 P.S. § 582.

work may be carried on at any period of the year, irrespective of the season. *Id.*

Specifically, the Supreme Court stated in *Froehly:*

It is not to be denied that the persons who own or control or operate the particular park at which claimant was employed, are, during the period their park is open for business and being operated by them, engaged in a seasonal occupation, one which regularly begins about the first of June and ends approximately September 1st. That period embraces their usual summer amusement season, and incidental to a profitable operation of the business of the park is such labor as washing dishes, cooking for the restaurant and scrubbing floors; all of them are occupations, necessary for the successful management of the resort for usually three months, but *also necessary and carried on for pay regularly for the full year in innumerable other places.* (Emphasis added.)

*Id.,* 291 Pa. at 164, 139 A. at 730.

The Supreme Court further noted as examples of seasonal occupations, "[h]op picking ... and the gathering of the peach crop are certainly seasonal occupations ... [which] ... the labor and action it entails must be begun and finished within approximately a certain, usual and definite period of the year,—the period or months when hops are ready to be picked and peaches ripe enough to be gathered." *Id.,* 291 Pa. at 163, 139 A. at 730.

The holding by the Supreme Court in *Froehly* has never been questioned by this Court or any other court of this Commonwealth.[2]

Quite aside from the question of what constitutes a "seasonal" employment, I must note that there is no evidence in the record in this case to support the referee's determination that this work was seasonal. First of all, the

2. *See American Mutual Insurance Co. v. Workmen's Compensation Appeal Board (Davenport),* 108 Pa.Commonwealth Ct. 345, 530 A.2d 121 (1987); *see also Dazely v. Luckenbach Steamship Co.,* 133 Pa.Superior Ct. 507, 3 A.2d 190 (1938), *aff'd,* 336 Pa. 432, 9 A.2d 905 (1939).

issue was not raised in Claimant's petition and answer. In paragraph 11 of the Claim Petition, Claimant stated his wage as "$410.00 per week," to which the Employer replied simply "denied, proof demanded." At trial, there was not only no contention or evidence that the work was seasonal, but Claimant testified that he was a laborer for Employer and also was an assistant to a welder, neither of which can possibly be classified as seasonal. Thus, there is no evidence to support the referee's Finding of Fact No. 13 "that the Claimant was employed in seasonal employment." R.R. 138a. Noteworthy is the fact that the word "seasonal" does not appear in the record of this case. Consequently, the issue was not raised, and the referee's source for finding that Claimant's employment was seasonal remains a mystery. In fact, the only inference possible on the record in this case is contrary to the referee's finding. The employer's sole witness, Claimant's foreman, testified that when laborers were laid off, he continued to be employed as a *laborer*, so that even by the wrong test for seasonal employment, the seasons when the *employer* works, if valid, would not be applicable here. R.R. 123a–124a. Moreover, Claimant testified that he worked "sometimes right through the Winter." R.R. 20a.

It is clear that the policy of an employer to lay off employees when they are not needed does not change a non-seasonal employment into a seasonal one, even if, as to this employer, the layoffs appear to be on a seasonal basis. *Froehly*.

I note that, while during the trial there was never a contention that Claimant's employment was in a seasonal occupation, this issue was raised for the first time on appeal to the Board, which affirmed by accepting the referee's decision.

Finally, while I agree with the majority's remand order, as noted, I must disagree with the majority's view that the Legislature did not intend to mandate a high compensation rate resulting from computation of injury date wages under paragraph four of Section 309(e).

Discounting the seasonal issue as is heretofore urged that we must, it has long been the settled law in this Commonwealth that the average weekly wage can be no less than the daily wage multiplied by the days in the work week. Thus, in *Romig v. Champion Blower & Forge Co.,* 315 Pa. 97, 172 A. 293 (1934), our Supreme Court reasoned that the Legislature could not have intended to provide for inequalities of compensation for injury disabilities suffered by employees of the same employer, depending on the days worked, when limited by economic conditions. The Court in *Romig* then concluded:

> We are of opinion, after full consideration of the question, that the five and a half day week was intended by the legislature to be the method by which compensation payments are to be fixed, based upon the daily wage. If this method of computation is not applied, injustice and inequalities between employees in the same establishment must result, and there will be no standard of measurement except the number of days worked in the week of the accident.... [stating examples of resulting inequalities] ... We think no such inequalities could have been intended.

Id., 315 Pa. at 104, 172 A. at 296.

This Court had occasion to discuss in *Frank M. Sheesley Co. v. Workmen's Compensation Appeal Board (Brant),* 106 Pa.Commonwealth Ct. 227, 526 A.2d 450 (1987), the last paragraph of Section 309(e) of the Act, which appears by enactment of the Legislature to now contain the rule laid down in *Romig.* In affirming the computation under that paragraph, although Claimant there worked only 5 days in the two quarterly periods preceding his injury, we held that:

> the claimant may maximize his weekly wage computation in accordance with the formulation contained in Section 309(e) despite the intermittent nature of his employment in the two quarters preceding his injury. In so holding, we are guided by our Supreme Court's decision in *Romig v. Champion Blower & Forge Co.,* 315 Pa. 97, 172 A. 293 (1934). In *Romig,* the claimant worked just two days per

week during the years of his employment, a restrictive schedule made necessary by economic conditions. Notwithstanding the fact that claimant worked only two days per week, the Court held that a computation of the average weekly wage using the then applicable 5 1/2 day work week standard was mandatory because claimant's employment was 'continuous, in that the status of the employer and employe persist[ed] between the parties even though no work was done on a particular day.' *Id.*, 315 Pa. at 102, 172 A. at 295.

*Id.*, 106 Pa.Commonwealth Ct. at 230, 526 A.2d at 451.

Moreover, in *Sheesley*, where seasonal employment was not an issue, but where Claimant's occupation and employment, as in this case, was subject to layoffs, we concluded that:

as in *Romig*, the claimant's employment was continuous, although the number of days actually worked was sporadic.

*Id.*, 106 Pa.Commonwealth Ct. at 230–231, 526 A.2d at 452.

Finally, in *Sheesley*, we rejected the view accepted by the majority that there was something inappropriate about a computation that resulted in a compensation wage that "exceeds [claimant's] actual remuneration."

We are, of course, cognizant of the fact that the claimant's average weekly wage as computed in accordance with the optional calculation of Section 309(e) [3] exceeds his actual remuneration. This Court has noted in *Guttman Oil Co. v. Workmen's Compensation Appeal Board*, 57 Pa.Commonwealth Ct. 486, 426 A.2d 760 (1981), ... that anomalous results may be reached by the literal application of Section 309(e) of the Act but that Romig is dispositive of the issue. 'Even if that is the case, [we] are

3. The Court in *Sheesley* was referring to the fourth paragraph of Section 309(e) of the Act and quoted it as follows:
   If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is less than if computed as follows, his [sic] computation shall apply, viz.: Divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the number of days he worked for such employer during such period multiplied by five.

bound by the provisions of Section 309(e) as interpreted by the Supreme Court.' As we said in *Romig*, 'We must take the law as we find it and apply the rules there set forth.' *Id.*, 57 Pa.Commonwealth Ct. at 490, 426 A.2d at 762, citing *Romig*, 315 Pa. at 103, 172 A. at 295. 'The apparent inequities must be remedied by the legislature, not this court.' *Guttman*, 57 Pa.Commonwealth Ct. at 490, 426 A.2d at 762.

There is no ambiguous or restrictive language in Section 309(e) of the Act. The claimant has satisfied the requirement of 'two completed quarters with the same employer' as found in that section and is entitled to maximize his average weekly wage for purposes of determining compensation in accordance with the formulation contained therein.

*Id.*, 106 Pa.Commonwealth Ct. at 231–232, 526 A.2d at 452 (footnote added).

Finally, I note that in *Guttman*, which is cited in the above quotation, this Court applied the last paragraph of Section 309(e) to a claimant who worked four days per week and held that, although the computation by multiplying the daily rate by five (5) resulted in a wage higher than that actually received by the claimant, this result was mandated by the Supreme Court in *Romig* and unambiguously by the Legislature.