William BEST, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (NURSEFINDERS OF ALLENTOWN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 23, 1995.
Decided Dec. 12, 1995.

Michael R. Bonshock, for petitioner.

Robert A. Taylor, for respondent.

Before DOYLE and KELLEY, JJ., NARICK, Senior Judge.

NARICK, Senior Judge.

William Best (Best) petitions for review of the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's determination of an average weekly wage of $569.91 for disability compensation. We affirm in part and reverse and remand in part.

On January 5, 1990, Best, a licensed practical nurse, injured his back, while lifting a patient, at Nursefinders of Allentown (Nursefinders). Best had worked part-time for Nursefinders for approximately two and a half months before his injury. Best also worked full-time for Harrisburg State Hospital (HSH).[1]

Best immediately began treatment with Paul R. Hetrick, D.C., for his back injury. Best continued working for both Nursefinders and HSH until May 1990, when Dr. Hetrick advised that Best cease working for both employers.[2]

1. Best's job at HSH did not require him to lift patients.

2. Best was completely disabled from May 3, 1990 until July 1, 1990.

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582.

4. Best has not returned to work with Nursefinders and Dr. Hetrick opines that Best will never be able to return to his job at Nursefinders.

On June 8, 1990, Nursefinder's insurer, Amguard Insurance Co., (Amguard) issued a Notice of Compensation Payable, which paid Best benefits at the rate of $376.23 per week based upon an average weekly wage of $564.35. At this time, Best's benefits were based solely upon wages from Nursefinders and did not include earnings from his concurrent employment with HSH. In order to calculate a weekly wage for Best, Amguard used a formula found in Section 309 of the Workers' Compensation Act[3] (Act) designed for an employee who has worked for the employer for less than 13 weeks.

On July 2, 1990, Best returned to work with HSH, but Dr. Hetrick did not permit Best to return to his job at Nursefinders.[4] Best also suffered a recurrence of his work-related injury and was again off work from HSH from October 3 until October 18, 1991.

Following Best's initial return to work with HSH, Amguard forwarded a Supplemental Agreement to Best dated August 28, 1990. This agreement also failed to take into account Best's wages from concurrent employment with HSH. Because of this fact, Best did not sign the agreement. Consequently, Best forwarded proof of wages of employment at HSH to Amguard. Amguard then issued a revised Notice of Compensation Payable, dated January 8, 1991, computing Best's weekly disability payment to be $419.00, based upon concurrent employment with Nursefinders and HSH; this computation was based on an average weekly wage of $975.55.[5]

Amguard prepared a second Supplemental Agreement, also dated January 8, 1991, confirming Best's average weekly wage of $975.55. Best signed this agreement, and returned it to Amguard. This Supplemental Agreement was never filed with the compen-

5. Best calculated the weekly wage by taking $564.35 as the average weekly wage for his job at Nursefinders and added that to his average weekly wage at HSH. Best took his best period earnings at HSH and divided that by 13 weeks to produce an average weekly wage. This formula is set forth in Section 309 of the Act, 77 P.S. § 582, for employees who have worked four periods.

sation authorities because Amguard subsequently believed that Best's average weekly wage had been miscalculated.

On March 25, 1991, Amguard unilaterally reduced Best's partial disability to $300.02, for a two week period. Amguard further unilaterally reduced Best's partial disability to $200.02, in the following two week period. On April 16, 1991, Amguard filed a Petition to Review alleging that Best's average weekly wage should be only $569.91,[6] instead of $975.55. Best never signed any revised supplemental agreements acknowledging partial disability consistent with an average weekly wage calculation of $569.91 per week. Instead, Best filed a penalty petition on May 3, 1991, claiming that Amguard had unilaterally reduced disability benefits without an order.

On February 10, 1992, Best filed a Petition to Reinstate Compensation Benefits for temporary total disability based on the October 1991 recurrence.

Following a hearing, the Workmen's Compensation Judge (WCJ) found that Best's average weekly wage was $569.91, and not $975.55. However, the WCJ did not address Best's reinstatement petition for the two week period of temporary total disability in October 1991, or the issue of whether penalties should be assigned to Amguard for unilaterally reducing Best's benefits without approval. Best appealed the WCJ's decision to the Board. The Board affirmed the WCJ with regard to the calculation of the concurrent average weekly wage but remanded to the WCJ to examine the possibility of imposing penalties which might be appropriate based upon Amguard's unilateral reduction of Best's partial disability entitlement. The Board also did not address the issue of whether Best's temporary total disability

benefits should have been reinstated in October 1991.

On remand, the WCJ did not find that Amguard's unilateral reduction of Best's partial disability entitlement deserved penalty. The WCJ found that it was not unusual for parties to correct wage matters on their own, and considered Amguard's unilateral reduction of Best's benefits "ministerial." Best again appealed to the Board which affirmed the WCJ and dismissed Best's appeal.

On appeal to this court,[7] Best argues that the average weekly wage has been miscalculated and does not accurately reflect his concurrent employment with both HSH and Nursefinders. In addition, Best claims that he should receive temporary total disability benefits for a two week period in October 1991, when he suffered a recurrence of his injury. Finally, Best contends that Nursefinders should be penalized for their unilateral reduction of his compensation benefits.

■ The first issue which must be considered is whether Best's average weekly wage was calculated correctly within the meaning of the Act. Section 309 of the Act states that, "[w]herever in this article the term 'wages' is used, it shall be construed to mean the average weekly wages of the employee." 77 P.S. § 582. When the employee has two separate jobs, the wages from both employers shall be considered as if earned from the employer liable for compensation. Section 309(e), 77 P.S. § 582(e).

However, the Board interpreted "wages" literally, adding the gross wages of both jobs, instead of following the clear mandate of Section 309 which defines, wages in the text of the statute, to mean *average weekly wages*.[8] Average weekly wages must be cal-

---

6. Amguard arrived at this calculation by simply adding together gross wages from HSH and Nursefinders earned in the last period and dividing by 13 weeks to produce an average weekly wage.

7. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

8. Section 309(d) of the Act states:
   If at the time of the injury the wages are fixed by the day, hour, or by the output of the

employe, the average weekly wage shall be the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury, or in case the employe receives wages, monthly or semi-monthly, by dividing by thirteen the total wages of said employe earned in the employ of the employer in the first, second, third, or fourth period of three consecutive

culated separately before adding wages in the concurrent employment situation.

■ Because Best worked for less than thirteen weeks at Nursefinders,[9] the formula set forth in the second paragraph of Section 309(d), must be utilized to calculate the average weekly wage for Best's employment at Nursefinders.[10] Despite the fact that Best was not a full-time employee of Nursefinders, and did not work forty hour weeks, the above method is used because claimants are entitled to maximize calculation of the average weekly wage for purposes of determining compensation in accordance with statutory formulation, given absence of ambiguous or restrictive language in the statute. *See* Section 309(e), paragraph four, 77 P.S. § 582(e). *Guttman Oil Co. v. Workmen's Compensation Appeal Board (William B. Miller),* 57 Pa.Cmwlth. 486, 426 A.2d 760 (1981). *See also Frank M. Sheesley Co. v. Workmen's Compensation Appeal Board (Brant),* 106 Pa.Cmwlth. 227, 526 A.2d 450 (1987).

Then, to calculate Best's average weekly wage at HSH, the first paragraph of Section 309(d), provides for the calculation of a claimant's average weekly wage if the claimant is paid by the hour; if claimant is paid by the week, then Section 309(a) is used. Because the statement of wages provided by HSH reflects a wage payment to Claimant both on an hourly basis *and* on a bi-weekly basis, it is impossible for this Court to compute an accurate reflection of Claimant's average weekly wage in this instance. Accordingly, a remand is necessary because the Board erred as a matter of law in its application of Section 309 of the Act.[11]

■ The second issue which must be addressed is whether penalties should be imposed upon Amguard for unilaterally reducing Best's benefits without authorization from the Board. Best argues that the Board erred as a matter of law in not imposing penalties for Amguard's unilateral reduction of benefits. Nursefinders argues that because a Supplemental Agreement was never submitted to the Board, the parties had no operative agreement which could be breached.

■ It is not the policy of this Court to endorse an employer's unilateral decision to reduce a claimant's benefits without a written agreement or official order. Such action is an unauthorized supersedeas for which penalties may be imposed. *Arnott v. Workmen's Compensation Appeal Board (Sheehy Ford Sales, Inc.),* 156 Pa.Cmwlth. 167, 627 A.2d 808 (1993), *appeal denied,* 537 Pa. 624, 641 A.2d 589 (1994). However, this Court has traditionally held that when the record indicates that an employer has violated the Act by unilaterally reducing benefits, the imposition of a penalty is left to the discretion of the WCJ. *Ortiz v. Workmen's Compensation Appeal Board (Fair Tex Mills, Inc.),* 102 Pa.Cmwlth. 493, 518 A.2d 1305 (1986).

Although it is clear from the referee's conclusions of law that Amguard did in fact unilaterally reduce benefits from the original Notice of Compensation Payable, the applica-

---

calendar months in the year immediately preceding the injury;

If the employe has been in the employ of employer less than thirteen calendar weeks (or three calendar months, if the employe receives wages monthly or semi-monthly) immediately preceding the injury, his average weekly wage shall be computed from the foregoing paragraph, taking 'total wages' for such purpose to be the amount he would have earned had he been so employed by employer the full thirteen calendar weeks (or three calendar months) immediately preceding the injury and had worked, when work was conclusively shown that by reason of exceptional causes such method of computation does not ascertain fairly the 'total wages' of employe so employed less than thirteen calendar weeks (or three calendar months);

9. We note that the January 13, 1993 decision of the referee states that "Claimant began work with Nursefinders about 2½ months before the injury of January 5, 1990." (Finding of Fact 16), yet the Board in its opinion (p. 3) recites that Claimant worked a full "forth [sic] quarter with [Nursefinders] although the work was only part-time."

10. This formula produces an average weekly wage had the employee worked a full quarter.

11. We assume that on remand the Board will also consider the alternative calculation under Section 309(f) of the Act. 77 P.S. § 582(f). See *Francis Connors v. Workmen's Compensation Appeal Board (BP Oil),* 663 A.2d 887 (Pa.Cmwlth. 1995).

tion of penalties by the WCJ is still discretionary, and we will not intervene.

The third and final issue is whether Best should receive total temporary disability benefits for the period in October 1991 when he suffered a recurrence of disability and could not work at either HSH or Nursefinders. Because there have been no findings made as to Best's eligibility for temporary total disability for the period in October 1991 when he was not working, we must remand to the WCJ for findings on this issue.

Accordingly, we affirm the order of the Board in part and reverse and remand for recalculation of benefits consistent with this opinion and for findings regarding Best's petition for temporary total benefits for the period in October 1991 when he suffered a recurrence.

### ORDER

AND NOW, this 12th day of December, 1995, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed in part and reversed and remanded in part for recalculation of benefits consistent with this opinion and for findings regarding Best's petition to temporary total benefits for the period in October 1991 when he suffered a recurrence.

Jurisdiction relinquished.