**PORT AUTHORITY OF ALLEGHENY COUNTY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (COOLEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 23, 2000.
Decided May 2, 2001.

Michael J. Seymour, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

Before SMITH, Judge, LEADBETTER, Judge and LEDERER, Senior Judge.

LEADBETTER, Judge.

Employer, Port Authority of Allegheny County, appeals from the order of the Workers' Compensation Appeal Board (Board), which granted claimant Douglas Cooley's modification petition and recalculated his average weekly wage. After review, we vacate and remand.

Claimant sustained a work-related wrist strain on July 7, 1997, and received benefits pursuant to a notice of compensation payable. The notice of compensation payable indicated that claimant's weekly benefit rate was $271.00 based upon an average weekly wage (AWW) of $335.86. In Octo-ber 1997, claimant executed a supplemental agreement acknowledging that as of October 23, 1997, he returned to work without a wage loss, thereby entitling employer to a suspension of benefits. Shortly thereafter, claimant filed a modification petition, averring that he had received an incorrect amount of workers' compensation benefits due to a miscalculation of his AWW.

During the hearing that followed, claimant argued that his benefits should be calculated pursuant to Section 309(d.1) of the Workers' Compensation Act (Act),[1] *as amended,* 77 P.S. § 582(d.1), because he did not work during the last three consecutive thirteen-week periods preceding his injury. Employer argued on the other hand that it *employed* claimant during the fifty-two week period preceding claimant's work injury and during that time, it provided claimant with medical benefits, sick benefits, paid vacation and seniority rights. Employer submitted a statement of wages, indicating it had paid claimant the following amounts during the last four consecutive thirteen-week periods preceding his injury: (1) from July 7, 1996 through October 5, 1996, employer did not make any payments to claimant; (2) from October 6, 1996 through January 4, 1997, employer paid claimant $1,069.60; (3) from January 5, 1997 through April 5, 1997, employer paid claimant $717.00; (4) from April 6, 1997 through July 5, 1997, employer paid claimant $11,311.88. In addition, employer provided evidence demonstrating that claimant did not work during the first and third periods; however, claimant worked 7 days in the second period and the entire fourth period. Based upon the aforesaid, employer argued that it properly calculated claimant's AWW (of $335.86) pursuant to Section 309(d) of the Act.

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

■ Based on the evidence presented, the WCJ granted claimant's modification petition and directed employer to recalculate claimant's AWW pursuant to Section 309(d.1) of the Act. In reaching this conclusion, the WCJ stated as follows:

> After a review of the legal arguments raised by both sides as well as the earnings records of the claimant, I find that defendant employer has improperly calculated the average weekly wage. I find that the claimant has not been employed by the employer for at least three consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding the work injury. *Black's Law Dictionary* defines employed as "performing work under an employer employee relationship. Term signified both the act of doing a thing and being under contracts or orders to do it. To give employment to; to have employment." It is clear from the information provided by the employer that the claimant was not performing job duties and earning wages in each of the [3] of the last [4] consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding the work injury. Since the claimant has not been "employed" by the employer for at least [3] consecutive periods of 13 calendar weeks in the 52 weeks immediately preceding the injury, § 309(d.1) of the ... Act applies and wages shall be calculated by dividing by 13 the total wages earned in the employ of the employer for any completed period of 13 calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

*Cooley v. Port Authority of Allegheny County,* slip op. at 3–4 (Decision and order of WCJ, dated June 30, 1998). The Board affirmed and the present appeal followed.[2]

Initially, we note that the present appeal hinges on the interpretation of the following two subsections of Section 309:

> Wherever in this article the term "**wages**" is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows;
>
> . . . .
>
> (d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c) [none of which applies to claimant in the present case], the average weekly wage shall be calculated by dividing by [13] the total wages earned in the employ of the employer in each of the highest [3] of the last [4] consecutive periods of [13] calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these [3] periods.
>
> (d.1) If the employe had not been employed by the employer for at least [3] consecutive periods of [13] calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by [13] the total wages earned in the employ of the employer for any completed period of [13] calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods. . . .

77 P.S. § 582.[3] Specifically at issue is the meaning of the term "employ" or "em-

---

**2.** The determination of a claimant's average weekly wage is a question of law; therefore, our review on appeal is plenary. *Eljer Ind. v. Workmen's Compensation Appeal Bd. (Johnson),* 670 A.2d 203, 205 n. 8 (Pa.Cmwlth. 1996).

**3.** The Act of June 24, 1996, P.L. 350 (Act 57), amended Section 309 by rewriting subsections (d) and (e) and inserting subsections (d.1) and (d.2).

ployed" as it appears in the above subsections.

On appeal, employer contends that application of Section 309(d.1) is inappropriate because it employed claimant during the fifty-two weeks preceding the work injury despite the fact that there were periods of time when claimant was not performing work. Implicit in employer's argument is the premise that the term "employed" is not limited to those periods of time where work or services are performed. Employer reasserts its argument that claimant's receipt of medical benefits, sick benefits, vacation days, and seniority rights during periods when he was not working demonstrates that claimant remained an employee during those periods when he was not performing services. In support of its position, employer relies on *Triangle Building Center v. Workers' Compensation Appeal Board (Lynch)*, 560 Pa. 540, 746 A.2d 1108 (2000), wherein the concept of employment was discussed in a different context.

In *Triangle*, the claimant's work injury occurred while he was temporarily laid off from a second job that he held. The issue addressed on appeal was whether the claimant's temporary lay-off from concurrent employment precluded inclusion of the concurrent earnings in the AWW calculation. Section 309(e) provided in pertinent part that "[w]here the employe is working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 77 P.S. § 582(e). The credited evidence demonstrated that the claimant was required to call the concurrent employer on a daily basis to determine whether work was available for the next day. An employee who failed to call in on two successive workdays was deemed by the employer to have quit his job. During the time that he was laid off, the claimant called his concurrent employer daily. Based on this evidence, the WCJ concluded that at the time of the claimant's injury, he had concurrent employment for purposes of determining his AWW. The Board affirmed and this court reversed, concluding that in order for concurrent earnings to be included in the benefits calculation, the claimant, at the time of his injury, must actually be working in the concurrent employment such that he is actually performing services in exchange for consideration. The Supreme Court reversed, stating:

> The mechanics of the legislative scheme demonstrate the General Assembly's intention that the baseline figure from which benefits are calculated should reasonably reflect the economic reality of a claimant's recent pre-injury earning experience, with some benefit of the doubt to be afforded to the claimant in the assessment. The Legislature ameliorated potential unfairness that might otherwise accrue to employers in this assessment by adjusting the "look back" according to the nature of the employment, see 77 P.S. § 582; by employing a substantial percentage-based reduction of the average weekly wages in the resulting calculation of actual benefits, see 77 P.S. § 511–512; and in the underlying trade-off between loss spreading and insulation of employers from tort liability inherent in the workers' compensation system.....

> We believe that the General Assembly directed inclusion of concurrent wages in the benefits computation for precisely the same reason—to create a reasonable picture of a claimant's pre-injury earning experience for use as a projection of potential future wages and, correspondingly, earnings loss. Thus, we find that in order for an employment relationship to constitute concurrent employment for

purposes of Section 309(e), the relationship must remain sufficiently intact such that the claimant's past earning experience remains a valid predictor of future earnings lost.

560 Pa. at 548–49, 746 A.2d at 1112–1113 (footnote omitted). *See also Hoffman v. Workers' Compensation Appeal Bd. (Acme Markets, Inc.)*, 716 A.2d 711 (Pa.Cmwlth. 1998).

In concluding that the WCJ did not err in holding that the claimant in *Triangle* had concurrent employment for purposes of determining his AWW, the Supreme Court noted that: (1) the claimant had a substantial, seven-year work history with the concurrent employer; (2) the claimant experienced few lay-offs during his work experience and was not terminated from the employment rolls during the periods of lay-off; (3) the claimant was required to call in on a daily basis to maintain his employment relationship; and (4) the claimant actually returned to work for the concurrent employer immediately after work became available.

We also find *Frank M. Sheesley Company v. Workmen's Compensation Appeal Board (Brant)*, 106 Pa.Cmwlth.227, 526 A.2d 450 (Pa.Cmwlth.1987), a pre-Act 57 case, to be instructive in determining whether Section 309(d.1) applies where the claimant has not performed services for his employer during each of the three thirteen-week periods prior to his injury but has maintained an employment relationship with the employer during that time frame. In *Sheesley*, the issue before this court was whether the claimant's pre-injury AWW should be calculated pursuant to former Section 309(d) or (e). Former Sec-

tion 309(d) provided for the computation of the AWW as "the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned ... in the first, second, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury...." [4] In turn, former Section 309(e) contained an optional calculation:

If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is less than if computed as follows, [this] computation shall apply, viz,-divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the numbered of days he worked for such employer during such period multiplied by five.[5]

Immediately preceding his injury, the claimant in *Sheesley* worked ten days in the first quarter, 30 days in the second quarter, no days in the third quarter, and five days in the fourth quarter. The employer argued that since the claimant did not work the entire two quarterly periods before his injury, the optional calculation of former Section 309(e) did not apply. This court concluded that the claimant's AWW was properly calculated pursuant to former Section 309(e) despite the intermittent nature of the work schedule. In doing so, we stated:

The employer here does not contend that claimant's employment was seasonal so as to implicate the computation in Section 309(e) for seasonal occupation. Nor does the employer contend that claimant was discharged after periods of employment and re-hired in subsequent

---

4. Section 2 of the Act of May 14, 1949, P.L. 1369.

5. We note that in addition to this optional AWW calculation, former Section 309(e) also

contained a provision governing the AWW calculation for claimants with seasonal employment or concurrent employment.

quarters. Indeed, the employer states in its brief that "claimant, with the exception of layoffs, was employed continuously for the year preceding the accident." We conclude that, as in *Romig* [*v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293 (1934) ], the claimant's employment was continuous, although the number of days actually worked was sporadic.

526 A.2d at 452.

■ Both *Triangle Building Center* and *Sheesley* demonstrate that the term "employ" or "employed" as used in Section 309 is not limited to the actual days an employee performs work, but encompasses the period of time that an employment relationship is maintained between the parties. Therefore, we conclude that the Board and WCJ erred as a matter of law in concluding that the term "employ" or "employed" must be limited to those situations where the claimant is actively engaged in the performance of services for compensation.

■ In reaching this conclusion, we reject claimant's argument that such an interpretation renders the term "completed" in Section 309(d.1) meaningless. In *Fantastic Sam's v. Workmen's Compensation Appeal Board (Kowalski)*, 167 Pa.Cmwlth. 130, 647 A.2d 648 (1994), this court addressed the issue of whether a claimant could take advantage of the optional calculation in former Section 309(e) [set forth above] if the claimant had not earned wages in both quarters. We held that former Section 309(e) did not require that an employee work for a specified period of time in order to take advantage of that calculation; rather, we interpreted the language to indicate that only wages earned

in the quarters specified could be considered in the AWW calculation. *Id.* at 651–52 [relying on *Follett v. Workmen's Compensation Appeal Board (Massachusetts Mut. Life Ins. Co.)*, 122 Pa.Cmwlth. 58, 551 A.2d 616 (1988) and *Pike v. Workmen's Compensation Appeal Bd. (Bob Hart Contractors)*, 162 Pa.Cmwlth. 455, 639 A.2d 887 (1994) ]. Notwithstanding that the Act 57 amendments have reduced the pro-claimant nature of the AWW calculation,[6] in the absence of any contrary legislative intent, we conclude that the phrase "any completed period of thirteen calendar weeks" must be construed consistently with *Fantastic Sam's* and the cases cited therein. Accordingly, we conclude that Section 309(d.1) is applicable where an employee has not maintained an employment relationship with the employer during the three consecutive periods of thirteen calendar weeks preceding the injury.

In the present case, employer asserts that it properly calculated claimant's AWW pursuant to Section 309(d) because it maintained an employment relationship with claimant during the 52 weeks preceding his injury. A review of the record reveals, however, that the WCJ has not made any findings in this regard. Therefore, we vacate the order of the Board and remand for findings (and a further hearing if necessary) consistent with this opinion.

Judge SMITH dissents.

### ORDER

AND NOW, this 2nd day of May, 2001, we VACATE the order of the Workers' Compensation Appeal Board in the above captioned matter and REMAND the mat-

---

**6.** As the Supreme Court noted in *Triangle Building Center v. Workers' Compensation Appeal Board (Lynch)*, 560 Pa. 540, 746 A.2d 1108 (2000), the modification of Section 309(d) to use an overall average figure to calculate the AWW rather than selecting the period yielding the highest wage, lessens to a certain extent the employee-favored aspect of the calculation. *Id.* at 548 n. 4, 746 A.2d at 1112 n. 4.

230

ter to the Board with instructions to re-
mand to the Workers' Compensation
Judge to conduct further proceedings ac-
cording to the foregoing opinion.

Jurisdiction relinquished.