**Benjamin ANDERSON, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (F.O. TRANSPORT and Uninsured Employer Guaranty Fund), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 5, 2014.

Decided March 10, 2015.

---

Eric S. Borjeson, Philadelphia, for petitioner.

Peter J. Weber and Geoffrey S. Lockyer, Philadelphia, for respondent Uninsured Employers' Guaranty Fund.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, ROBERT SIMPSON, Judge, ANNE E. COVEY, Judge.

OPINION BY Judge LEADBETTER.

Benjamin Anderson (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the order of the Workers' Compensation Judge (WCJ) suspending Claimant's disability benefits on the basis that his earning power exceeded his average weekly wage (AWW). We conclude that the WCJ's determination of Claimant's weekly earning power is supported by the evidence, but that the WCJ's calculation of Claimant's AWW is incorrect. We accordingly reverse the Board's order affirming the suspension of Claimant's benefits and remand to modify his benefits based on the correct AWW.

## I.

Claimant filed a claim petition against F.O. Transport, Inc. (Employer) on February 11, 2008, alleging that he sustained an injury to his right ankle and foot on December 27, 2007, while working for Employer as a truck driver. He later filed another claim petition for the same injury against both Employer and the Uninsured Employers Guaranty Fund (Fund).[1] To support the claim petitions, Claimant testified as follows.

Claimant applied for a truck driver position with Employer in November 2007. At that time, the owner of Employer, Frank Oostdyk, stated that Claimant would be paid 30% of Employer's charges for a load to be delivered and that he would earn $1100 to $1200 a week. Claimant was also told that he would additionally receive $100 for each run to pay lumpers.[2] After he was hired, Claimant made a first run on December 20, 2007. In the first run, Claimant unloaded the truck himself and kept the $100 lumper fees received from Oostdyk because the $100 was allegedly not enough to pay lumpers. In his second run to Maine on December 21, Claimant paid lumpers with the $100.

In his third run on December 27, 2007, Claimant was directed to pick up a load in Philadelphia, stop in Springfield, Massachusetts and then proceed to Hatfield, Massachusetts. After arriving at Hatfield, he started to unload the truck himself using a pallet jack because he allegedly did not have enough money to pay a lumper. While unloading, he injured his right leg when it was caught between the back of the pallet jack and the skid. He testified that he sustained the injury "a week-and-a-half" or "two weeks" after he was hired. June 30, 2008 Hearing, Notes of Testimony (N.T.) at 8; Reproduced Record (R.R.) at 17a. After the injury, he received disability benefits under the insurance policy purchased by Employer for its drivers. Oostdyk testified that Claimant was told in November 2007 that he could have five or six runs per week, earning $900 to $1000.

Claimant's treating physician, Dr. Pekkar Mooar, a board-certified orthopedic surgeon, opined that Claimant sustained a bimalleolar fracture, i.e., a fracture on both sides of the ankle joint, on December 27,

1. The Fund maintains funds to pay workers' compensation benefits to any claimant or dependents where an employer liable to pay benefits failed to insure or self-insure its liability at the time of the injury. Section 1602(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 7 of the Act of November 9, 2006, P.L. 1362, 77 P.S. § 2702(c).

2. A person unloading a truck is referred to as a "lumper" in the trucking business. WCJ's December 30, 2009 Decision, Finding of Fact No. 1b; Reproduced Record at 131a.

2007 and was unable to return to his pre-injury position. Dr. Paul Horenstein, a board-certified orthopedic surgeon, who performed an independent medical examination on January 21, 2009, found that although Claimant had some difficulty with heel and toe walking, he could return to a truck driver position.

Accepting the testimony of Claimant and Dr. Mooar as credible and rejecting the testimony of Oostdyk and Dr. Horenstein, the WCJ found that Claimant was an employee, not an independent contractor, and that he had not fully recovered from the work injury and was unable to return to his pre-injury position. The WCJ further found that Claimant had no set work hours or work days, and that the most he earned in one run was $270. The WCJ concluded that Claimant's AWW could not be calculated under Section 309(d.2) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582(d.2). Section 309(d.2) provides that "[i]f the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the [AWW] shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment." Using an alternative method, the WCJ determined that Claimant's AWW was $405 (($270 × 3 runs) ÷ 2 weeks of employment). The WCJ granted the claim petitions and ordered Employer and the Fund to pay Claimant weekly disability benefits of $364.50 based on his AWW of $405.

Claimant appealed and challenged the WCJ's calculation of his AWW. He argued that his weekly wage should be $1100 to $1200 based on his testimony or $900 to $1000 based on Oostdyk's testimony regarding Oostdyk's statement of his expected weekly earnings. The Fund also appealed, arguing that the WCJ erred in directing both Employer and the Fund to jointly pay Claimant disability benefits when the Fund could be only secondarily liable.

The Board agreed with the WCJ's method of calculating Claimant's AWW, but noted that the WCJ did not address whether the $200 lumper fees kept by Claimant should be included in his AWW. The Board modified the WCJ's order to make the Fund secondarily liable for Claimant's work injury and remanded to the WCJ to recalculate Claimant's AWW and to determine the amount of credit to be awarded Employer for disability benefits received by Claimant under Employer's insurance policy. The Board affirmed the WCJ's order in all other respects. The Fund thereafter filed a petition to modify or suspend Claimant's benefits as of January 13, 2011, alleging that he had weekly earning power equal to or greater than his pre-injury AWW. The WCJ held a hearing on remand to decide the remanded matters and the Fund's petition.

As to the remanded matters, the WCJ awarded Employer a credit for weekly disability benefits of $273 received by Claimant for 104 weeks from Employer's insurance policy and concluded that the lumper fees were not part of Claimant's wages and should not be included in his AWW.

To support the petition for modification or suspension, the Fund presented the deposition testimony of Dr. Horenstein who examined Claimant on May 26, 2010 and reviewed his medical records. Dr. Horenstein testified that the fracture of Claimant's right ankle had fully healed with a slightly decreased range of motion. Dr. Horenstein released Claimant to full-time, medium-duty work with restrictions of constant lifting of up to 10 pounds, frequent lifting of up to 20 pounds and occasional lifting of up to 50 pounds. Claimant was permitted to sit without restrictions,

stand and walk for three to five hours, and drive for five to eight hours a day.

The Fund's vocational expert, Christopher Terranova, reviewed Dr. Horenstein's report and physical capability evaluation and interviewed Claimant on October 12, 2010. Claimant, a 55–year–old high-school graduate, was previously employed as a construction worker and a truck driver. Claimant told Terranova that he was convicted of drug-related offenses in 1979 and an offense of being affiliated with a criminal organization in 1985. Terranova conducted a labor market survey and located ten open, available full-time positions within Claimant's restrictions placed by Dr. Horenstein and paying weekly wages of $360 to $440. Terranova viewed physical activities of three positions located in Philadelphia within 10 to.15 miles from Claimant's home: cashier positions with Parkway Corporation and with Pacifico Airport Valet Services, and a PBX telephone switchboard operator position with Loews Hotel. As to Claimant's 1979 and 1985 convictions, Terranova testified that employers usually check an applicant's criminal record only for the past 10 years and that Claimant's convictions would have no impact on his ability to handle the jobs. Dr. Horenstein approved the positions located by Terranova as within Claimant's restrictions.

Claimant testified that although the condition of his right ankle improved a little, he could walk less than two blocks and stand for no more than 30 minutes due to pain, and that Randall Smith, M.D., a board-certified orthopedic surgeon and pain management specialist, treated him once · a month. Claimant admitted that he wore normal shoes, was able to drive and may be able to work in a sedentary position. Despite the 1979 and 1985 convictions, for which he served a six-year imprisonment, he was hired by various employers and was never accused of stealing. Dr. Smith testified that Claimant suffered from posttraumatic arthritis, an altered gait and a loss of movement as a result of the 2007 work injury. He treated Claimant with prescribed pain medicine and felt that medications taken by Claimant would impair his ability to work. He would release Claimant only to part-time work with restrictions of walking for one to three hours and continuous driving for one hour a day.

Claimant's vocational expert, Gary Young, testified that Claimant would have a difficulty in making a vocational adjustment and that the cashier and telephone switchboard operator positions were not vocationally appropriate for Claimant. Young testified that although Claimant's 1979 and 1985 convictions did not involve stealing, they would still impact on his ability to get a job involving handling money. Young testified that the telephone switchboard position at the hotel was not appropriate for Claimant because of his 1985 conviction of being affiliated with a criminal organization. Young stated that "[a] criminal organization would like to know when people are out of hotel rooms so that they can go in and take things from ... rooms." Young's Deposition at 27; R.R. at 266a. He further testified that the potential employers told him that they would not hire Claimant because of his felony convictions. Young admitted that he contacted the employers two or three months after Terranova's labor market survey, by which time the positions may not have remained open.

The WCJ found Claimant's testimony not credible and accepted Dr. Horenstein's testimony as more credible than Dr. Smith's testimony. The WCJ also found Terranova's testimony credible and rejected Young's testimony. The WCJ determined that Claimant had weekly earning

power of $440 based on the wages that he would have earned in the positions located by Terranova. Because Claimant's weekly earning power exceeded his AWW of $405, the WCJ suspended his disability benefits as of Terranova's January 13, 2011 labor market survey. Concluding that the evidence accepted by the WCJ supported the WCJ's decision, the Board affirmed. Claimant's appeal to this Court followed.

## II.

Claimant first challenges the WCJ's determination of AWW. He argues that his AWW should be $810, the total amount he earned before the work injury, or $900 to $1200 based on his testimony and Oostdyk's testimony regarding his expected weekly earnings. He further argues that the $200 lumper fees he kept should be added to his AWW.[3]

■ Under Section 309(d.2) of the Act, where the employee has worked less than a complete period of 13 calendar weeks and has no fixed weekly wages, the AWW is "the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment." Section 309(d.2) covers "recently-hired employees for whom there was ... no accurate measure of AWW other than taking *the existing hourly wage* and projecting forward on the basis of *the hours of work expected* under the employment agreement." *Reifsnyder v. Workers'*

Comp. Appeal Bd. (Dana Corp.), 584 Pa. 341, 883 A.2d 537, 547 (2005) (emphasis added). Claimant did not have a fixed hourly wage rate. In addition, his expected number of weekly work hours could not be determined because he worked only when Employer had a load to run. Hence, his AWW could not be calculated using the method in Section 309(d.2) of the Act.

■ Where, as here, the Act does not address a method of calculating the AWW for a particular situation, the AWW is calculated using an alternative method which will advance the overall humanitarian purpose of the Act. *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder)*, 575 Pa. 66, 834 A.2d 524, 533 (2003). The AWW "should reasonably reflect the economic reality of a claimant's recent pre-injury earning experience, with some benefit of the doubt to be afforded to the claimant in the assessment." *Triangle Bldg. Ctr. v. Workers' Comp. Appeal Bd. (Linch)*, 560 Pa. 540, 746 A.2d 1108, 1112 (2000). In addition, "some reasonable assessment must be made of claimants' pre-injury ability to generate further earnings." *Id.* The determination of AWW is a question of law subject to our plenary review. *Port Auth. of Allegheny Cnty. v. Workers' Comp. Appeal Bd. (Cooley)*, 773 A.2d 224, 226 n. 2 (Pa.Cmwlth.2001).

In *Hannaberry*, the claimant worked part-time for the employer while in high school and began working full-time after he graduated from high school. Three

---

**3.** Our review in this appeal is limited to determining whether an error of law was committed and whether WCJ's necessary findings are supported by substantial evidence. *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab)*, 15 A.3d 944, 947 n. 1 (Pa.Cmwlth. 2010). The appellate role in a workers' compensation case is not to reweigh the evidence or the credibility of the witness, but to simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Work-*

men's Comp. Appeal Bd. (Skirpan), 531 Pa. 287, 612 A.2d 434, 437 (1992). It is irrelevant whether the record contains some evidence supporting findings other than those made by the WCJ. *Burrell v. Workers' Comp. Appeal Bd. (Phila. Gas Works)*, 849 A.2d 1282, 1288 (Pa.Cmwlth.2004). Finally, we must review the evidence in a light most favorable to the party who prevailed before the WCJ. *Shop Vac Corp. v. Workers' Comp. Appeal Bd. (Thomas)*, 929 A.2d 1236, 1242 n. 4 (Pa. Cmwlth.2007).

months later, he sustained an injury to his spinal cord, which rendered him quadriplegic. His AWW ranged from $57.25 to $110.56 in the three quarter periods before he became a full-time employee, but it increased to $473.65 in the calendar quarter after assuming a full-time status. Concluding that Section 309(d) of the Act does not control the calculation of AWW "in a situation ... where it would lead to a grossly and demonstrably inaccurate measure of a worker's [AWW]," our Supreme Court held that the claimant's AWW must be calculated using only the quarter in which he worked full-time. *Hannaberry*, 834 A.2d at 534.

Subsequently in *Burkhart Refractory Installation v. Workers' Compensation Appeal Board (Christ)*, 896 A.2d 9 (Pa. Cmwlth.2006), the claimant did not have an expected number of work hours, as Claimant in this matter, and earned wages only in 12 weeks of his 16–week employment. Concluding that to calculate the claimant's AWW under Section 309(d.2) of the Act would not reflect the economic reality of his pre-injury earnings, the Board calculated his AWW by excluding 4 weeks, in which he earned no wages, and by dividing his gross wages by 12 weeks, in which he actually earned wages. This Court found that the Board's approach "accurately capture[d] economic reality." *Id.* at 13. The Court stated: "Including the weeks that Claimant earned no wages would be unfair because Claimant had just started working and he should not be penalized for sustaining a work injury close to a time when Employer did not have work available for him every week." *Id.* The Court concluded that "in accordance with *Hannaberry*, [the Board's approach] fairly assesses Claimant's earnings when he was actually working and advances the humanitarian purpose of the Act." *Id.*

■ The method adopted by the WCJ in this matter to calculate Claimant's AWW is not consistent with *Burkhart Refractory*. Claimant earned no wages in the first week of his two-week employment because Employer did not have work available to him. As in *Burkhart Refractory*, therefore, inclusion of the first week of his employment in calculating his AWW would not accurately reflect the economic reality of his pre-injury ability to generate further earnings. Such method would be unfair and would not advance the humanitarian purpose of the Act. We conclude, therefore, that his AWW should be $810, the amount which the WCJ found he earned in the second week of his employment.

■ As to the $200 lumper fees kept by Claimant, the WCJ rejected as not credible Claimant's testimony that he unloaded the trucks and kept the lumper fees because they were not enough to pay lumpers. Oostdyk testified that Claimant was not supposed to unload the truck himself and that if Claimant needed more money to pay lumpers, Employer could have sent him an expedited payment electronically. The WCJ found that Claimant admittedly did not use the lumpers as instructed "because he wanted to keep the money himself and did not feel like waiting to find an individual to unload the truck." WCJ's January 24, 2013 Decision, Finding of Fact No. 7.

In a workers' compensation case, the credibility determinations and evaluations of evidentiary weight are the province of the WCJ who may accept and reject the testimony of any witness in whole or in part. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1156 (Pa.Cmwlth.2007). Because the WCJ's findings that the lumper fees were not part of Claimant's wages and should not be included in the AWW are based on the credibility determinations, those find-

ings may not be disturbed on appeal. *Leca v. Workers' Comp. Appeal Bd. (Phila. Sch. Dist.)*, 39 A.3d 631, 634 n. 2 (Pa. Cmwlth.2012).

### III.

Claimant next challenges the WCJ's decision to suspend his benefits. Claimant argues that the WCJ erred in accepting as credible Dr. Horenstein's testimony regarding his capability to perform the full-time positions located by Terranova and Terranova's testimony regarding the vocational suitability of those positions to him in order to establish Claimant's earning power.

Under Section 306(b)(2) of the Act, 77 P.S. § 512(2), the claimant's earning power is determined by the work that he or she is capable of performing, "based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area." The employer must prove that there were open jobs which the claimant was capable of performing and for which the claimant had a reasonable opportunity to apply. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 623 Pa. 25, 81 A.3d 830, 843 (2013). An employer may obtain a modification or suspension of the claimant's benefits based on evidence of his or her earning power alone. *Riddle v. Workers' Comp. Appeal Bd. (Allegheny City Elec., Inc.)*, 603 Pa. 74, 981 A.2d 1288, 1292 n. 8 (2009).

Claimant argues that Dr. Horenstein's testimony regarding his capacity to return to full-time, medium-duty work with restrictions was equivocal because during his cross-examination, Dr. Horenstein agreed with Dr. Smith that his degenerative arthritis in the right ankle was causally related to the work injury.

The medical evidence is unequivocal, if the medical expert testifies that he or she believes or thinks the facts exist. *ARMCO, Inc. v. Workmen's Comp. Appeal Bd. (Carrodus)*, 139 Pa.Cmwlth. 326, 590 A.2d 827, 829 (1991). In determining whether medical testimony is equivocal, the testimony must be reviewed and taken as a whole. *Lewis v. Commonwealth*, 508 Pa. 360, 498 A.2d 800, 803 (1985). Medical testimony is unequivocal as long as the witness does not recant the opinion first expressed. *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.)*, 35 A.3d 69, 72 (Pa.Cmwlth.2011). Whether a medical expert's testimony is equivocal is a question of law subject to plenary review. *BJ's Wholesale Club v. Workers' Comp. Appeal Bd. (Pearson)*, 43 A.3d 559, 565 (Pa.Cmwlth.2012).

On his direct examination, Dr. Horenstein opined that Claimant's work injury was "essentially limited" to a bimalleolar ankle fracture and that Claimant had not fully recovered from the work injury. Dr. Horenstein's September 21, 2011 Deposition at 20; R.R. at 178a. Dr. Horenstein explained that Claimant previously sustained a bimalleolar ankle fracture in 1990s and underwent surgery, and that X-rays taken after the 2007 work injury showed "some arthritis" in the right ankle. *Id.* at 21: R.R. at 179a. Dr. Horenstein testified that Claimant's "main problem" was "the degenerative changes," but that he could return to the full-time positions located by Terranova with restrictions. *Id.*

On cross-examination, Dr. Horenstein testified that the May 3, 2009 X-rays showed that Claimant had "some mild degenerative changes," which could cause some pain in walking and occasional swelling and could worsen over time. *Id.* at 32–33; R.R. at 190a–191a. On re-cross examination, Dr. Horenstein testified that he did not review the records of Claimant's

previous ankle surgery. When asked if Claimant's degenerative conditions were related to the 2007 work injury, he testified that "it was a combination of the two [injuries], which would be the most likely scenario" and that "the aftermath" of the 2007 work injury was "a substantial factor in causing the degenerative conditions along with the earlier [injury]." *Id.* at 43; R.R. at 201a. When asked on re-direct examination if Claimant's previous injury would cause some level of degenerative changes, Dr. Horenstein testified: "It's hard to say, because I didn't have access to his [X]-rays before he broke his ankle the second time." *Id.* at 44: R.R. at 202a.

Contrary to Claimant's assertion, the record amply demonstrates that Dr. Horenstein did not deny the causal relationship between Claimant's work injury and his degenerative arthritis in the right ankle. Dr. Horenstein never recanted his opinion rendered on the direct examination that although Claimant had not fully recovered from the work injury, he could return to the full-time positions listed in Terranova's labor market survey. When reviewed in its entirety and taken as a whole, Dr. Horenstein's testimony is not equivocal.

Claimant also challenges the WCJ's acceptance of Terranova's testimony as more credible than Young's testimony regarding the vocational suitability of the cashier and switchboard operator positions to him. Claimant argues that those positions were not appropriate for him because he did not have any experience in working with a cash register or operating a computer or a switchboard. He further argues that "many employers would not consider hiring him due to the nature of [his] convictions." Claimant's Brief at 30.

Under Section 306(b)(2) of the Act, an employee is partially disabled if he or she is able to perform pre-injury work or to engage in "any other kind of substantial employment" in the usual employment area. Claimant testified that he was a high school graduate and could read and write the English language. The WCJ accepted Terranova's testimony that Claimant had requisite skills to perform the positions approved by Dr. Horenstein and that his convictions, which were 27 and 33 years old as of the May 8, 2012 hearing, did not affect his ability to work in those positions. As Claimant and Young acknowledged, Claimant's convictions did not prevent him from obtaining various jobs since his release from prison in 1985, and he has not been accused of stealing. The WCJ stated:

> Mr. Young placed undue significance on Claimant's prior convictions … and did not convey the age of Claimant's convictions to the employers he contacted. It is not reasonable to assume that Claimant would steal cars as a cashier at Parkway, when he has no history of theft, and use that as a basis to find a job unsuitable.

WCJ's January 24, 2013 Decision, Finding of Fact No. 9. Because the WCJ's finding of the vocational suitability of the positions was based on the credibility determination, it may not be disturbed on appeal. *Leca,* 39 A.3d at 634 n. 2.

Accordingly, the Board's order affirming the WCJ's decision to suspend Claimant's benefits is reversed. This matter is remanded to the WCJ to modify Claimant's benefits based on his AWW of $810 and his weekly earning capacity of $440. The Board's order is affirmed in all other respects.

## ORDER

AND NOW, this 10th day of March, 2015, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is reversed to the extent

that it affirmed the decision of the Workers' Compensation Judge (WCJ) to suspend disability benefits of Benjamin Anderson (Claimant). This matter is remanded to the WCJ to modify Claimant's benefits based on his average weekly wage of $810 and his weekly earning power of $440. The order of the Board is affirmed in all other respects.

Jurisdiction relinquished.