# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Curry, : 
                       : 
           Petitioner : 
                       : 
          v. : No. 82 C.D. 2015
                       : 
Workers' Compensation Appeal : Submitted: July 17, 2015
Board (Brian's Professional Cleaning : 
and Restoration and State Workers' : 
Insurance Fund), : 
                       : 
          Respondents : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**           **FILED: September 10, 2015**

Anthony Curry (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) Decision and Order granting Claimant's Petition to Review Compensation Benefits (Review Petition) and Brian's Professional Cleaning and

Restoration's (Employer) Modification Petition.[1]  On appeal, Claimant contends that the WCJ erred in granting the Modification Petition because (1) Employer failed to prove that it did not have a job vacancy Claimant was capable of performing; (2) substantial evidence does not support the WCJ's finding that Claimant was physically and vocationally suited for jobs identified by a labor market survey; and (3) remand is necessary so that he can present evidence that he did not have a reasonable opportunity to apply for the jobs identified by the labor market survey.  Because Employer sustained its burden to prove that it did not have a job vacancy within Claimant's capacities, and substantial evidence supports the WCJ's findings that Claimant was suited for two positions identified in the labor market survey, we affirm.

## I.  Background

Claimant was injured in the course and scope of his employment on July 11, 2011.  (WCJ Decision, Findings of Fact (FOF) ¶ 1.)  Employer issued a Notice of Compensation Payable (NCP) acknowledging an injury described as a "RT WRIST CONTUSION" and providing total disability benefits.  (FOF ¶¶ 1, 2.)  Claimant's weekly compensation rate was $352.24 based on an average weekly wage of $391.38.  (FOF ¶ 1.)

Following an Independent Medical Examination (IME) conducted on September 13, 2012, Employer issued a Notice of Ability to Return to Work on September 14, 2012.  (Notice of Ability to Return to Work, C.R. at Item D-1.)  On

---

[1] Neither party challenges the Board's Order as it relates to Claimant's Review Petition. Accordingly, only the Modification Petition is at issue.

February 21, 2013, Employer filed a Modification Petition seeking to modify Claimant's benefits as of February 21, 2013 based on a labor market survey showing that vocationally and physically appropriate work is generally available in the area where Claimant resides. Claimant filed an answer denying the averments contained in the Modification Petition and subsequently filed a Review Petition on May 23, 2013 seeking to amend the description of his injury to include "right wrist contusion, peripheral TFC tear[,] membranous tear of his scapholunate ligament, de Que[r]vain's syndrome with nerve damage[, and] thumb ligament damage." (Review Petition at 2, R.R. at 18a.) The Modification Petition and Review Petition were consolidated and hearings before the WCJ ensued.

In support of the Modification Petition, Employer presented the deposition testimonies of its Office Manager; Scott Naftulin, D.O.; and Frances K. Terry, a vocational case manager. In opposition to Employer's Modification Petition, Claimant testified on his own behalf and submitted the deposition testimonies of his treating physician, A. Lee Osterman, M.D., and Dennis Mohn, a rehabilitation counselor.

Employer's Office Manager testified as follows. Employer employs approximately 100 individuals, including around seventy-seven janitorial employees, fourteen office workers, five carpenters, and four or five employees assigned to the floor covering the showroom. (FOF ¶ 4; Office Manager's Dep. at 9-10, R.R. at 65a-66a.) Office Manager received a document, which was prepared by Dr. Naftulin, from Employer's insurer detailing Claimant's medical restrictions. (FOF ¶ 4; Office Manager's Dep. at 11, R.R. at 66a.) The document completed by

3

Dr. Naftulin limited Claimant to medium-duty work, with lifting restricted to no more than fifty pounds, and further limited the repetitive motion of Claimant's right hand to occasional/frequent. (Physical Capabilities Form, R.R. at 117a.) Thereafter, Office Manager was contacted by Ms. Terry. (Office Manager's Dep. at 12, R.R. at 66a.) They discussed Claimant's restrictions, after which Office Manager informed Ms. Terry that Employer had no openings that fit within the restrictions. (Office Manager's Dep. at 12-13, R.R. at 66a.)

Office Manager testified that Claimant was not suited for the carpenter position because carpenters hired by Employer must be experienced in the field and able to lift and nail with two hands. (Office Manager's Dep. at 14-16, R.R. at 67a.) The secretarial positions within the office are not suited for Claimant because such positions require repetitive typing throughout the day. (Office Manager's Dep. at 16, R.R. at 67a.) Further, Claimant was not suited for the janitor position because janitorial workers are required to lift furniture and heavy buckets of water, requiring the use of two hands. (Office Manager's Dep. at 18-19, R.R. at 68a.) Finally, Claimant was not capable of performing the position in the floor covering the showroom because showroom floor workers are essentially sales representatives that must have knowledge of flooring products and able to estimate square footage. (Office Manager's Dep. at 16-17, R.R. at 67a.) Between September 13, 2012[2] and February 21, 2013, the period between when Claimant

---

[2] Office Manager testified that Claimant was able to return to work on September 13, 2012, the date of Dr. Naftulin's report releasing Claimant to work. The Notice of Ability to Return to Work was issued on September 14, 2012. (Notice of Ability to Return to Work, C.R. at Item D-1.) The Bureau of Workers' Compensation's regulations state that "[t]he employer's obligation to offer a specific job vacancy to the employee commences when the insurer provides the notice to the employee required by section 306(b)(3) of the [Workers' Compensation] act (77

*(Continued…)*

4

was released to return to work and the date Employer filed the instant Modification Petition, Office Manager hired a secretarial worker and may have listed a janitorial position on Craigslist, but neither of these positions fell within Claimant's restrictions. (Office Manager's Dep. at 19-21, R.R. 68a.)

Ms. Terry, a licensed professional counselor and vocational expert with twenty-six years of experience, testified as follows. (FOF ¶ 7; Terry's Dep. at 9-11, R.R. 130a-31a.) She met with Claimant on October 22, 2012 for an initial vocational assessment meeting. (Terry's Dep. at 17-18, R.R. at 132a-33a.) Ms. Terry then searched for vocationally suitable jobs for Claimant and identified four positions through a labor market survey. (FOF ¶ 7; Terry's Dep. at 25, R.R. at 134a.) These positions were: (1) a customer service employee at Telerx earning $360.00 per week; (2) a telephone sales representative at Always Travel earning $400.00 per week plus commission; (3) a front desk clerk at Best Western Plus, earning $320.00-$360.00 per week; and (4) and a payroll specialist at Paychex earning $430.00 per week. (FOF ¶ 7; Terry's Dep. at 25-30, R.R. at 134a-36a.) Ms. Terry visited each job site and spoke to representatives from the firms to confirm that the positions were vocationally appropriate for Claimant. (Terry's Dep. at 29, 44, R.R. 135a, 139a.) Ms. Terry then confirmed that Claimant was physically suited for these positions by sending descriptions of the positions to Dr.

P. S. § 512(b)(3)) and shall continue for 30 days or until the filing of a Petition for Modification or Suspension, whichever is longer." 34 Pa. Code § 123.301(b). See also Rosenberg v. Workers' Compensation Appeal Board (Pike County), 942 A.2d 245, 251 (Pa. Cmwlth. 2008) ("The time period in question starts with the notice of ability to return to work and continues until the filing of a petition for modification."). As such, the question in this case is whether Employer proved that it did not have a vacancy within Claimant's capabilities between September 14, 2012 and February 21, 2013.

Naftulin and Dr. Osterman. (Terry's Dep. at 34, R.R. at 137a.) Both doctors approved all four jobs. (Terry's Dep. at 34, 37, 38, 40, R.R. at 137a-38a.)

Dr. Naftulin, who is board certified in family practice, physical medicine and rehabilitation, testified that he conducted Claimant's IME for Employer on September 13, 2012. (FOF ¶ 6; Naftulin's Dep. at 10, R.R. at 94a.) In addition to conducting a physical exam, Dr. Naftulin reviewed Claimant's medical history, including the records supplied by Claimant's medical expert, and evaluated possible work restrictions. (FOF ¶ 6; Naftulin's Dep. at 17-24, R.R. at 95a-97a.) Dr. Naftulin opined that Claimant suffered from a right wrist contusion, de Quervain's tenosynovitis, right dorsal radial sensory nerve irritation, peripheral tear of the triangular fibrocartilage, partial tear of the scapholunate ligament, and right thumb ligament partial tear. (Naftulin's Dep. at 24, R.R. at 97a.) In Dr. Naftulin's opinion, Claimant

> was released to full-time medium level of work without limitations in sitting, standing, walking, driving, bending, squatting or climbing. He could use his left hand without restriction. He could push and pull with both hands without restriction. However, I suggested limiting use of the right hand to a frequent level in terms of repetitive motion.

(Naftulin's Dep. at 24, R.R. at 97a.) Dr. Naftulin also reviewed the four job positions identified by the labor market survey and opined that, because the positions were sedentary and required no lifting, Claimant was physically capable of performing all of these positions. (Naftulin's Dep. at 25, R.R. at 97a.)

Claimant testified in opposition to the Modification Petition as follows. Prior to his injury, Claimant had been employed as a floor cleaner on and off for

6

twenty-five to thirty years. (Hr'g Tr. at 12, June 24, 2013, R.R. at 43a.) Claimant's work for Employer was labor intensive and involved extensive bending, lifting, stretching, and kneeling. (Hr'g Tr. at 13, R.R. at 44a.) Claimant was required to move furniture, lift gallons of wax, and carry machines weighing around fifty pounds up and down stairs. (Hr'g Tr. at 13, R.R. at 44a.) Since sustaining his injury, Claimant cannot lift anything over twenty pounds with his right hand. (Hr'g Tr. at 15, R.R. at 46a.) He is in pain when it rains and when he does certain activities without a wristband. (Hr'g Tr. at 15-16, R.R. at 46a-47a.) Claimant often experiences weakness, causing him to drop items and to have trouble lifting household items. (Hr'g Tr. at 16, R.R. at 47a.)

Claimant has a high school diploma. (Hr'g Tr. at 8, R.R. at 39a.) While in high school, Claimant enrolled in a typing class for a short time, but does not know how to type. (Hr'g Tr. at 8-9, R.R. at 39a-40a.) Claimant's other work experience includes time in the Army National Guard as a Communications Operator and as a mail room supervisor for Pitney Bowes. (Hr'g Tr. at 9-10, 19, R.R. at 40a-41a, 50a.) His work at the National Guard included transmitting and receiving messages. (Hr'g Tr. at 19, R.R. at 50a.) At Pitney Bowes, Claimant supervised two other workers, sorted mail, and picked-up and dropped-off mail. (Hr'g Tr. at 11, R.R. at 42a.) Claimant has never been employed in a position that used computers. (Hr'g Tr. at 12, R.R. at 43a.) He uses Facebook with the assistance of his fiancé and knows how to scroll down webpages, but lacks general computer knowledge and does not know how to operate Microsoft Windows, Word, or Excel. (Hr'g Tr. at 12-13, R.R. at 43a-44a.) Prior to his injury, Claimant was enrolled in culinary arts classes. (Hr'g Tr. at 14, R.R. at 45a.) Claimant passed a

7

test to be a service aid, but failed the kitchen certification test. (Hr'g Tr. at 15, R.R. at 46a.) Claimant took the tests on a computer, but his operation of the computer was limited to scrolling down, hitting buttons, and moving the arrow. (Hr'g Tr. at 21, R.R. at 52a.) Claimant stopped attending the class after he failed the kitchen test and cannot return until he pays for back tuition. (Hr'g Tr. at 15, R.R. at 46a.) Claimant believes that he could do light-duty work, such as being a greeter at Walmart or secretarial work, but has no experience interacting with the public and lacks computer knowledge. (Hr'g Tr. at 14, 17, R.R. at 45a, 48a.)

Claimant testified that, upon review of the four positions identified in the labor market survey, he concluded that he could not perform any of the jobs. (Hr'g Tr. at 17, R.R. at 48a.) Claimant testified that he called each of the employers to inquire if computer knowledge was required. (Hr'g Tr. at 17, R.R. at 48a.) Claimant stated that he would take a position if he felt that he could perform the tasks. (Hr'g Tr. at 17, R.R. at 48a.)

Dr. Osterman, a board certified orthopedic surgeon with added qualifications in hand surgery, testified on behalf of Claimant as follows. (FOF ¶ 8.) Dr. Osterman first examined Claimant on March 26, 2012. (Osterman's Dep. at 8, R.R. at 184a.) He also reviewed Claimant's medical history and concluded that Claimant suffered from "a work-related crush injury with ligament damage to the wrist, to the thumb, irritation of the de Quervain's tendons and dorsal radial sensory nerve irritation." (Osterman's Dep. at 10, R.R. at 186a.) Dr. Osterman testified that he performed surgery on Claimant on April 24, 2012, where he looked inside Claimant's wrist through a wrist arthroscopy and repaired a tear in

8

Claimant's triangular fiber cartilage by suturing the tear. (Osterman's Dep. at 10-11, R.R. at 186a-87a.) Dr. Osterman also stated that he observed a partial tear of the scaphoid lunate ligament, which is not repairable. (Osterman's Dep. at 11, R.R. at 187a.) According to Dr. Osterman, he also performed a procedure to free up the tendons and scar tissue in Claimant's thumb and cleaned out the CMC joint. (Osterman's Dep. at 11, R.R. at 187a.)

Dr. Osterman referred Claimant to therapy after the surgery and opined with a reasonable degree of medical certainty that, although Claimant still had residual symptoms of his work injury and some of his injuries were permanent, Claimant reached his maximum medical improvement on November 5, 2012. (Osterman's Dep. at 12, 15, R.R. at 188a, 191a.) According to Dr. Osterman, Claimant was diagnosed with "a tear of the peripheral triangular fiber cartilage; . . . a partial scaphoid lunate tear; . . . ligament damage and aggravated arthritis of his CMC joint of his right thumb; . . . tendonitis of the de Quervain's area of his thumb/wrist axis; . . . injury to the dorsal radial sensory nerve of the wrist." (Osterman's Dep. at 14, R.R. at 190a.) Dr. Osterman cleared Claimant for "light to sedentary duty restriction[s]," which limited Claimant to, *inter alia*, lifting twenty pounds and typing with ten fingers for less than eight hours per day. (Osterman's Dep. at 19, 21, R.R. at 195a, 197a.) Dr. Osterman testified that he reviewed the job descriptions provided by the labor market survey twice and believes that each falls within Claimant's physical restrictions. (Osterman's Dep. at 23, R.R. at 199a.)

Mr. Mohn, a certified rehabilitation counselor with over thirty years of experience, testified as follows. (FOF ¶ 9.) Mr. Mohn performed a vocational

9

assessment by interviewing Claimant, reviewing the depositions of Dr. Naftulin and Dr. Osterman, Office Manager, and Ms. Terry, and attempted to reproduce the labor market survey conducted by Ms. Terry. (Mohn's Dep. at 7-8, R.R. at 344a-45a.) Mr. Mohn investigated the four positions listed on the labor market survey and described the requirements for each as follows.

The Telerx position is essentially a customer service/call center position which requires a high school diploma or GED and experience with Microsoft Word and Excel. (Mohn's Dep. at 21, R.R. at 358a.) Applicants for the Telerx position must pass a computer-based data entry test. (Mohn's Dep. at 22, R.R. at 359a.) The Always Travel position is a telemarketing position and the employer prefers applicants with at least some sales experience. (Mohn's Dep. at 23-24, R.R. at 360a-61a.) The Best Western position is for a front desk clerk that requires good customer service skills and computer literacy. (Mohn's Dep. at 25, R.R. at 362a.) Hunt and peck typing is not sufficient for this position. (Mohn's Dep. at 25, R.R. at 362a.) Further, Best Western requires its front desk clerks to be on their feet up to eight hours per day and to lift and carry guests' luggage, weighing up to fifty pounds, when sufficient bell people or housekeeping staff are unavailable. (Mohn's Dep. at 25-26, R.R. at 362a-63a.) Applicants for the payroll specialist position at Paychex must have a minimum of three years of office experience and skills in data entry, customer service, and problem solving. (Mohn's Dep. at 27, R.R. at 364a.)

Mr. Mohn opined that Claimant was not vocationally suited for any of the positions identified by Ms. Terry in the labor market survey. (Mohn's Dep. at 34,

10

R.R. at 371a.) Further, in Mr. Mohn's opinion, the internal secretarial position available during the pertinent timeframe, as described by Office Manager, is "almost identical" to the jobs found in the labor market survey. (Mohn's Dep. at 30-32, R.R. at 367a-69a.) Mr. Mohn believed that if Claimant had the skills necessary to meet the requirements of the positions in the labor market survey, he would have the skills to fill the internal position described by Office Manager. (Mohn's Dep. at 32, R.R. at 369a.)

After reviewing the evidence, the WCJ made the following relevant findings of fact:

> 10. Based upon my observation of him, claimant's testimony that he is not capable of performing any of the jobs in the Labor Market Survey is rejected in favor of the credible vocational testimony. Moreover, even claimant's medical expert opines he is physically capable of performing each of the jobs. Claimant's testimony that he has minimal computer skills that would preclude him from performing data entry positions is rejected as lacking in credibility in light of the fact that claimant took a test on the computer and he navigates Facebook.

> 11. [Office Manager]'s testimony is entirely credible and persuasive and is supported by claimant's own belief that he is physically incapable of performing less strenuous positions described in the Labor Markey Survey. Her testimony is also consistent with that of claimant's treating physician, Dr. Osterman, who did not believe claimant could perform floor cleaning jobs, his pre-injury job, or high production data entry.

> 12. Claimant had a reasonable opportunity to apply for the four jobs between January 17, 2013, the date of the Labor Market Survey report, and April 2, 2013, when Mr. Mohn confirmed that three of the jobs were still open. Claimant chose not to apply, because he did not believe he could perform the jobs.

11

13. I accept the testimony of Franc[e]s K. Terry that claimant is vocationally suited for performing the job at Always Travel and the job at Best Western. Her testimony that claimant is vocationally suited for performing the Telerx job and Paychex job is rejected. In this regard, it is notable that Ms. Terry acknowledges the Paychex position is the most difficult and requires more computer use than the other positions. Although the Telerx and Always Travel positions are somewhat similar, Ms. Terry's testimony supports a finding that the Telerx job is more complicated than the one at Always Travel (N.T. 31, 35). In addition, Always Travel provides training. Because I have rejected two of the positions, I reject Ms. Terry's opinion that claimant has an earning capacity of $374.00 per week. Rather, based upon the two appropriate positions, I find claimant has an earning capacity of $360.00 per week ($400.00 + $320.00 = $720.00 / 2 = $360.00). Therefore, claimant's partial disability benefit rate is $20.92 ($391.38 - $360.00 = $31.38 x 2/3 = $20.92).

14. I reject Mr. Mohn's opinion that claimant is not vocationally suited to perform any of the four jobs available in the Labor Market Survey. Mr. Mohn acknowledges that the Always Travel position requires very little computer entry and that the job description is accurate. Mr. Mohn opined the Best Western position is not suitable because it requires claimant's ability to open computer screens. However, Mr. Mohn admittedly did not know that claimant had the ability to take an examination on the computer. Furthermore, his belief that there is a *possibility* claimant would have to maneuver luggage weighing up to 50 pounds is insufficient to foreclose this position from consideration.

15. Dr. Osterman's opinion that claimant sustained a tear of the triangular fibrocartilage, a partial scaphoid lunate tear, ligament damage to the CMC joint and aggravation of CMC joint arthritis of the right thumb, de Quervain's tendonitis, and an injury to the dorsal radial sensory nerve of the right wrist is credible and persuasive. His testimony that claimant does not have carpal tunnel syndrome is credible and persuasive. His opinions are accepted because he performed surgery and was able to see the anatomical structures at issue. In addition, his opinion is supported, in part, by Dr. Naftulin's opinion.

16. Dr. Naftulin's opinion that claimant is fully recovered from the de Quervain's tenosynovitis and the distal dorsal sensory nerve and the scapholunate instability is credible and persuasive and supported by

12

Dr. Naftulin's thorough physical examination. Dr. Naftulin's opinion regard[ing] claimant's physical capabilities is also more credible and persuasive than Dr. Osterman's. Dr. Osterman did not offer any physical exam findings that would refute Dr. Naftulin's opinion.

(FOF ¶¶ 10-16 (emphasis in original).)

Based on these findings, the WCJ concluded that Employer "prove[d] that it had no specific job vacancy that claimant was capable of performing between September 14, 2012 and February 21, 2013" and "met its burden of proving there was work generally available to claimant in his labor market area within his physical and vocational capabilities." (WCJ Decision, Conclusions of Law (COL) ¶¶ 2-3.) Accordingly, the WCJ granted Employer's Modification Petition.[3]

Claimant appealed the WCJ's Decision[4] to the Board, which affirmed. With respect to the allegations of error advanced by Claimant with regard to the grant of Employer's Modification Petition, the Board first held that the WCJ did not err by allowing Employer to present evidence regarding earning power. The Board concluded that Claimant "did not make the required showing that [Employer] had an open position he was capable of performing but did not offer the position to

---

[3] The WCJ also concluded that Claimant met his burden of proving that he sustained injuries beyond those listed in the NCP and granted his Review Petition. (COL ¶ 4.)

[4] The WCJ issued an Amended Order on December 19, 2013 in response to Claimant's request to amend the litigation cost award. The Amended Order amended the WCJ's original findings of fact only with regard to litigation costs and reaffirmed the original Decision and Order in all other respects. Because the issue of litigation costs is not before us, we will not address the Amended Order.

13

him." (Board Op. at 8.) Next, the Board held that Employer was not precluded by Section 12112 of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, from proceeding to the labor market survey because the ADA's requirement that employers provide reasonable accommodations to its disabled employees "is not relevant to the determination of an earning capacity under Section 306(b)(2)" of the Workers' Compensation Act (Act).[5] (Board Op. at 8.) Finally, the Board concluded that the WCJ's findings with regard to the general availability of work, as evidenced by the labor market survey, were supported by substantial evidence and no remand was necessary to determine whether Claimant had a reasonable opportunity to apply for the positions. (Board Op. at 8-10.) Claimant subsequently filed the instant Petition for Review with this Court.[6]

---

[5] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 512(2). Section 306(b)(2) provides in relevant part:

> "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. . . . If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation.

Id.

[6] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law

*(Continued…)*

14

**II. Discussion**

Under Section 306(b)(2) of the Act "an employer may seek modification of a claimant's benefits by either offering the claimant a specific job that it has available that he is capable of performing or establishing earning power through expert opinion evidence." Kleinhagan v. Workers' Compensation Appeal Board (KNIF Flexpak Corporation), 993 A.2d 1269, 1275 (Pa. Cmwlth. 2010) (internal quotation marks omitted). A claimant may defend against a modification petition by placing prima facie evidence into the record "that a position was available with employer that he was physically capable of performing during the time period between the issuance of the Notice of Ability to Return to Work and the filing of the modification petition." Id. Once the claimant has put forth prima facie evidence, the employer bears the burden to prove no position was available. Id.

If an employer sustains its burden of proving that a specific job within the claimant's capacities was not available with employer during the relevant timeframe, the employer may proceed to present expert testimony of earning power. Rosenberg v. Workers' Compensation Appeal Board (Pike County), 942 A.2d 245, 251 (Pa. Cmwlth. 2008). A claimant's earning power is "determined by the work [that he or she] is capable of performing . . . , based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area." Section 306(b)(2) of the Act, 77 P.S. § 512(2). The employer bears the burden of proving

---

was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

that claimant had a reasonable opportunity to apply for open jobs which the claimant was capable of performing. Anderson v. Workers' Compensation Appeal Board (F.O. Transport), 111 A.3d 238, 246 (Pa. Cmwlth. 2015). The employer must show "the existence of meaningful employment opportunities, and not the simple identification of jobs found in want ads or employment listings." Phoenixville Hospital v. Workers' Compensation Appeal Board (Shoap), 81 A.3d 830, 842-43 (Pa. 2013).

## A. Employer's Internal Positions

On appeal to this Court, Claimant raises several issues. Claimant first argues that the Board erred by allowing Employer to present evidence of earning power because Employer failed to offer him open internal secretarial and janitorial positions. Claimant asserts that he successfully rebutted the Modification Petition by presenting prima facie evidence showing that Employer had an open position between September 14, 2012 and February 21, 2013, that Claimant was capable of performing. Claimant contends that he met his burden by: (1) raising the issue of a possible job opening with Employer by refusing to stipulate that there were no jobs available; (2) presenting the testimony of Mr. Mohn, who opined that the jobs identified in the labor market survey were essentially identical to the secretarial position described by Office Manager; and (3) eliciting testimony on cross-examination of Office Manager that she hired a secretary and janitor during the relevant time period.

Even if Claimant is correct that he made a prima facie showing that Employer had an open position he was capable of performing, but was not offered

16

to him, we need not reverse the Board's Order if we conclude that Employer met its burden of proving that it had no positions available during the relevant dates within Claimant's restrictions that were not offered to Claimant.[7] See Rosenberg, 942 A.2d at 251 (holding that an employer may present expert testimony of earning power if it sustains its burden of proving that a specific job within the claimant's capacities was not available).

It is well known that "credibility determinations and evaluations of evidentiary weight are the province of the WCJ." Anderson, 111 A.3d at 245. Our role is not to reweigh evidence, but to determine whether the WCJ's findings, when viewed in the light most favorable to the party that prevailed before the WCJ, are supported by substantial evidence. Id. at 244 n.3. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel), 29 A.3d 762, 769 (Pa. 2011). If the testimony accepted by the WCJ constitutes substantial evidence, conflicting testimony will not serve as grounds for disturbing the WCJ's findings. Rocco v. Workers' Compensation Appeal Board (Parkside Realty Construction), 725 A.2d 239, 244 (Pa. Cmwlth. 1999). "Whether the facts found by the WCJ reflect that a party has met its burden of proof in a workers' compensation proceeding is a conclusion of law" subject to our plenary review. Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer), 894 A.2d 214, 217 (Pa. Cmwlth. 2006).

---

[7] "[T]his Court may affirm on grounds different than those relied upon by the court or agency below if such grounds for affirmance exist." Motor Coils MFG/WABTEC v. Workers' Compensation Appeal Board (Bish), 853 A.2d 1082, 1087 n.9 (Pa. Cmwlth. 2004).

The WCJ found that Claimant was not capable of performing the positions Employer had open between September 13, 2012 and February 21, 2013. (FOF ¶ 11.) This finding was based on the following evidence and credibility determinations. Office Manager testified that Claimant was not physically or vocationally qualified for the secretarial job because secretaries need to quickly type letters and answer phones. (Office Manager's Dep. at 38-39, R.R. at 73a.) Office Manager's testimony that the secretarial position was not within Claimant's restrictions was corroborated by Claimant's own testimony that he does not know how to type, use computers, and has never used a phone in a professional manner. (Hr'g Tr. at 9, 12, 17, R.R. at 40a, 43a, 48a.) Office Manager also testified that Claimant was not physically capable of performing the janitorial job open during the relevant dates because that position requires maneuvering a heavy bucket of water, possibly weighing over fifty pounds, in a fast-paced environment. (Office Manager's Dep. at 26-29, R.R. at 70a.) Dr. Osterman, Claimant's expert medical witness, released Claimant for sedentary to light-duty work and testified that Claimant's injuries precluded him from lifting, pushing, and pulling more than twenty pounds. (Osterman's Dep. at 13, R.R. 189a.) The WCJ found Office Manager's testimony "entirely credible and persuasive." (FOF ¶ 11.) Thus, we conclude that the WCJ's finding that Claimant was not capable of performing the secretarial and janitorial positions open at some point between September 13, 2012 and February 21, 2013 is supported by substantial evidence. In light of the WCJ's supported findings, we hold that Employer met its burden to prove that it had no open positions between September 14, 2012 and February 21, 2013 that Claimant was capable of performing. Accordingly, the Board did not err by allowing Employer to present evidence regarding Claimant's earning power.

18

Claimant next argues that the Board erred by not considering Employer's obligations under Section 12112 of the ADA and concluding that Employer's ADA obligations are not relevant to a Section 306(b)(2) analysis. Claimant argues that, even if he was not physically capable of fully performing the tasks associated with the janitorial or secretarial positions, Employer has a responsibility under the ADA to make reasonable accommodations for disabled employees. We disagree.

The determination at issue in this matter is whether Employer is entitled to modification of Claimant's workers' compensation benefits under the Act. Section 306(b)(2) allows employers to modify benefits if the employer either offers an available job within the claimant's restrictions or proves, through a labor market survey, that there were open jobs which the claimant was capable of performing and for which the claimant had a reasonable opportunity to apply. Anderson, 111 A.3d at 246. As recognized by the Board, when establishing a claimant's earning capacity by a labor market survey, "the relevant considerations are the claimant's residual productive skill, education, age and work experience." (Board Op. at 8 (citing Section 306(b)(2)).) The Act does not require an employer to modify a job to comply with an employer's obligations under the ADA. As such, the Board did not err when it concluded that Section 12112 of the ADA was not relevant to Claimant's appeal.

## B. The Always Travel and Best Western Positions

Next, Claimant argues that the WCJ's findings that he was suited for the Best Western and Always Travel jobs are not supported by substantial evidence.

19

Our review reveals that the following evidence supports the WCJ's finding that Claimant is suited for both the Best Western and Always Travel positions.

Both Dr. Naftulin and Dr. Osterman opined that Claimant was physically capable of performing these positions. (Naftulin's Dep. at 25, R.R. at 97a; Osterman's Dep. at 23, R.R. at 199a.) Ms. Terry opined that the Best Western position was vocationally appropriate because it is an entry level front desk clerk job that does not involve data entry and requires very little computer use. (Terry's Dep. at 37-38, R.R. at 137a-38a.) The position involves taking and confirming reservations, charging credit cards, and giving patrons room keys. (Terry's Dep. at 37, R.R. at 137a.) According to Ms. Terry, Claimant is vocationally appropriate for the Always Travel position because it does not involve data entry and requires no sales experience. (Terry's Dep. at 35-36, R.R. at 137a.) The position is entry level and involves calling customers and offering them travel packages. (Terry's Dep. at 35, R.R. at 137a.) Although the position requires the employee to enter information into a computer, Ms. Terry opined that the position was within Claimant's capabilities and that training was provided. (Terry's Dep. at 35, R.R. at 137a.)

Claimant's argument is essentially that his vocational expert, Mr. Mohn, who opined that Claimant is not suited for the Best Western and Always Travel positions, is correct and the opinion of Employer's expert, Ms. Terry, is wrong. The WCJ rejected Mr. Mohn's opinion that Claimant is not suited for the Best Western and Always Travel positions because Mr. Mohn was not fully informed as to Claimant's capabilities; specifically, Mr. Mohn was not aware of Claimant's

20

ability to take a test on the computer. (FOF ¶¶ 10, 14.) Based on Ms. Terry's testimony that these positions were within Claimant's limited experience with computers, the WCJ found Ms. Terry's testimony credible. (FOF ¶¶ 7, 13.) As discussed above, credibility determinations and "evidentiary weight are the province of the WCJ," not this Court. Anderson, 111 A.3d at 245. Accordingly, we conclude that the WCJ's finding that Claimant was capable of performing the Best Western and Always Travel positions is supported by substantial evidence.

Claimant next argues that the Board erred when it accepted the WCJ's finding that he was suited for the Best Western and Always Travel positions because those positions were of the same type, and required the same skills and capabilities, as the secretarial job available with Employer that was not offered to Claimant. Claimant argues that the WCJ's factual findings – that Claimant is incapable of performing the secretarial position at Employer, but is capable of performing similar work with other employers – are in conflict and impossible to sustain. According to Claimant, either he is capable of performing all of the secretarial jobs, or he is capable of performing none of them.

Claimant's argument is unavailing because the WCJ found that Claimant was only capable of performing the Best Western and Always Travel positions which, in contrast to the internal secretarial position, required minimal computer skills. (FOF ¶ 13.) The WCJ rejected the positions at Telerx and Paychex because the Telerx position was "more complicated" than the other positions and, in the case of the Paychex position, "require[d] more computer use than the other positions." (FOF ¶ 13.) Conversely, the Best Western and Always Travel jobs

required less data entry and computer skills. (FOF ¶¶ 13-14.) Further, the WCJ found, based on Office Manager's and Dr. Osterman's testimony, that Claimant was not suited for the secretarial position at Employer because it involved "high production data entry." (FOF ¶ 11.) Because we hold above that the WCJ's finding that Claimant was not vocationally suited for the secretarial position with Employer was supported by substantial evidence of record, we conclude that the Board did not err when it affirmed the WCJ's finding that Claimant was vocationally suited for the Best Western and Always Travel positions, but not the secretarial position with Employer.

## C. Reasonable Opportunity to Apply

Finally, Claimant argues that the Board erred when it concluded that Claimant had a reasonable opportunity to apply for the four positions identified in the labor market survey. Claimant contends that the WCJ decided his case prior to the Supreme Court changing the law governing the issue of job availability in Phoenixville Hospital. Claimant argues that, pursuant to Phoenixville Hospital, we should remand this case so that he may present testimony on the issue of his attempts to apply for the positions identified by the labor market survey and for the WCJ to make related factual findings. Employer argues in response that Claimant's reliance on Phoenixville Hospital is misplaced because Claimant neither testified that he applied for any of the identified positions, nor that he was told that any of the positions were no longer available.

In Phoenixville Hospital, the Supreme Court interpreted Section 306(b)(2) of the Act and concluded that

22

expert opinion evidence under Section 306(b)[(2)] functions not only as a means of demonstrating that there are open jobs that exist within the claimant's limitations, but also as a mechanism for providing the claimant with notice of the existence of these jobs, which thus provides a serious opportunity to secure employment.

Phoenixville Hospital, 81 A.3d at 844. According to the Supreme Court, Section 306(b)(2) requires that the jobs identified remain open for "such time as the claimant is afforded a reasonable opportunity to apply for them." Id. at 845. Evidence showing a claimant unsuccessfully applied for the positions listed in a labor market survey could be used to rebut the employer's argument that identified positions were available. Id. at 846. However, as the Supreme Court noted, "it would only be the motivated claimant who would be able to offer admissible evidence regarding these matters." Id. at 846 n.19. "Not all claimants would pursue employment opportunities presented to them. . . ." Id.

We agree with the Board that the Supreme Court's holding in Phoenixville Hospital is inapplicable. (Board Op. at 9.) We reached the same conclusion in Privette-James v. Workers' Compensation Appeal Board (University of Pennsylvania) (Pa. Cmwlth., No. 1906 C.D. 2013, filed June 5, 2014).[8] The claimant in Privette-James argued that her case should be remanded because there were no findings of fact demonstrating that any of the jobs identified in a labor market survey were actually open and available. Id., slip op. at 12-13. We disagreed and held that the "[c]laimant's reliance on Phoenixville Hospital is misplaced for the reason that [the c]laimant never applied for any of the positions

_____

[8] Pursuant to Section 414 of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court filed after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414.

identified in the labor market survey or disputed whether they were actually available for a reasonable time." Id., slip op. at 16.

In the instant matter, Claimant does not contest that the positions identified by the labor market survey were actually open during the relevant time period. The WCJ made a specific finding that three of the positions identified by the labor market survey remained open between January 17, 2013 and April 2, 2013 and that Claimant chose to not apply because he did not believe he could perform the jobs. (FOF ¶ 12.) The WCJ's finding is supported by the testimony and reports of both Ms. Terry and Mr. Mohn. According to Mr. Mohn's report, both the Best Western and Always Travel positions were available as of April 2, 2013. (Mohn's Dep., Ex. 2 at 6-8, C.R. at Item C-3.) Because Claimant does not dispute his own witness' testimony that the Best Western and Always Travel positions were open during the relevant period, Phoenixville Hospital does not compel a remand.

For the foregoing reasons, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

24

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Curry,                          :
                                        :
                    Petitioner          :
                                        :
            v.                          :    No. 82 C.D. 2015
                                        :
Workers' Compensation Appeal            :
Board (Brian's Professional Cleaning    :
and Restoration and State Workers'      :
Insurance Fund),                        :
                                        :
                    Respondents         :

# **O R D E R**

**NOW**, September 10, 2015, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.


_____
**RENÉE COHN JUBELIRER, Judge**